Joseph A. D'AMBRA et al.,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

Joseph A. D'AMBRA et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

Nos. 73–1375, 73–1376.

United States Court of Appeals,
First Circuit.

Argued March 6, 1974.

Decided June 23, 1975.

---

Girard R. Visconti, Providence, R. I., with whom Abedon & Visconti, Providence, R. I., was on briefs, for Joseph A. D'Ambra et al.

Everett C. Sammartino, Asst. U. S. Atty., with whom Lincoln C. Almond, U. S. Atty., was on briefs, for United States.

Before COFFIN, *Chief Judge,* ALDRICH and CAMPBELL, *Circuit Judges.*

COFFIN, *Chief Judge.*

These cross appeals arise under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), for injuries sustained as a result of shock suffered by plaintiff-appellant when she witnessed her four year old son being struck and killed by a United States mail truck. The district court denied the government's motion to dismiss, holding that, under the laws of Rhode Island, a mother foreseeably in the vicinity of her child, may recover damages for such injuries, although she suffered no direct physical impact nor, was she in the zone of danger. *D'Ambra v. United States,* 354 F.Supp. 810 (D.R.I. 1973). The government appeals from this decision as well as from the award of $10,000 plus medical expenses, which it claims was excessive. The plaintiff-appellant also appeals, arguing that the award was so inadequate and contrary to the weight of evidence as to be erroneous, and that the district court erred in denying plaintiff-appellant's motion for leave to amend the complaint by increasing the ad damnum.

The stipulated facts are the findings from a prior trial of negligence on the part of the mail truck driver, freedom from contributory negligence on the part of plaintiff-appellant and her deceased son, and the eyewitness status of plaintiff-appellant, who was not in the "zone of danger" at the time of the accident. It is undisputed, in addition, that, prior to the accident, plaintiff-appellant was in good health, slept well, and reputed to be a calm person, and was fairly cheerful and happy. Since the accident she has suffered a loss of appetite, has had trouble sleeping, with nightmares of the accident, and has had difficulty holding her newborn twins, who remind her of her deceased son. After five visits to a psychiatrist, she felt that no one could help her, and rejected further treatment. Her psychiatrist diagnosed the condition as "psychoneurosis, depression type", and characterized her withdrawal from treatment as a manifestation of her psychoneurosis. He testified that viewing the accident would have been sufficient to cause the condition, and would bring about a more intense and prolonged mental effect than would have resulted had plaintiff-appellant simply heard about the accident. His testimony was corroborated by another doctor who responded to hypothetical questions. Neither doctor was able to specify the difference in severity resulting from witnessing as distinguished from simply hearing of the accident. There was general agreement that plaintiff-appellant's condition was produced by both the witnessing of the accident and the death of the child.

Taking advantage of the new certification procedure adopted by the Supreme Court of Rhode Island in Sup. Ct.R. 6, we certified the basic liability question to that court. In a thoughtful and comprehensive opinion, *Joseph A. D'Ambra* v. *United States,* 338 A.2d 524, issued on May 21, 1975, the court held that "a nonnegligent mother, who although suffering no physical impact suffers serious mental and emotional harm accompanied by physical symptoms from actually witnessing the death of her non-negligent minor child as a direct result of the defendant's negligence, may maintain an action for negligent infliction of emotional distress, despite the fact that she herself was never in physical danger." (at p. 531.) The denial of the motion to dismiss must therefore be affirmed.

The only remaining issues are the cross challenges to the size of the damage award. The government contends that damages for plaintiff-appellant's psychological condition, caused by witnessing the accident, are too speculative to warrant an award. The government argues, first, that a significant part of the psychological condition resulted from bereavement over the loss of the child—a condition both limitless in scope and capable of spurious claims. Yet two doctors testified that witnessing the accident probably increased the trauma for plaintiff-appellant. Although Rhode Island does not have a rule for burden of proof on such apportionment, we do not believe that, where the injury is indivisible, the Rhode Island courts would allow a tortfeasor's mere allegation of another cause to relieve him from all liability, particularly where the tortfeasor is responsible for both causes. The Rhode Island court acknowledged this problem, at 529, and by implication placed major reliance on the trier to make a reasonable assessment.

The government's second line of argument is that, even if damages could be apportioned for the psychological condition resulting from the shock of witnessing the accident, such damages are in themselves too speculative to warrant a specific valuation. Yet merely calling it a "psychological condition" does not mean that the attendant physical symptoms are incapable of objective determination. As the Rhode Island court said in *D'Ambra, supra,*

> "There are obstacles inherent in the rendering of justice on the basis of complex and often conflicting testimony from medical experts especially where the situation is fraught with emotional appeal. It may be noted, however, that comparable problems of proof have been faced and overcome in the area of intentional torts, *see Bedard* v. *Notre Dame Hosp.,* 89 R.I. 195, 151 A.2d 690, *supra,* and where a plaintiff is suing for psychological injuries resulting from fears for her own safety. *See Simone* v. *Rhode Island Co.,* 28 R.I. 186, 66 A. 202 (1907).
>
>> 'In the difficult cases, we must look to the quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims.' *Battalla* v. *State,* 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729 (1961), quoted with approval by *Tobin* v. *Grossman,* 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969); see also Prosser, *Torts* § 54 (4th ed. 1971); Comment: *Negligently Inflicted Mental Distress: The Case for an Independent Tort,* 59 Geo.L.Rev. 1237 (1970–71)." at 530.

The trial court appears to have taken the doctor's opinion as to length of necessary future treatments as a basis for computing the $10,000 in damages. The government contends that this figure is too high, since the plaintiff-appellant brought upon herself the prolongation of necessary treatment by rejecting treatment during the year following the accident. We emphasize, however, that the damage figure which the district court

278

arrived at is merely an approximation for the present scope of appellant's injuries, for which the government is responsible, rather than compensation for estimated future costs of treatment. The doctor who treated plaintiff-appellant during the year following the accident testified that her rejection of treatment was a normal manifestation of her psychoneurotic state at that time. As such, the present scope of her injuries is in line with the expected consequences of the accident.

Plaintiff-appellant argues, on the other hand, that because the district court relied upon the doctor's opinion as to the length of necessary future treatment, the approximate cost of that future treatment should have been included in the computation of medical expenses, in addition to the $84 for medical expenses already incurred, and the $10,000 for "pain and suffering." But examination of the record reveals that the doctor testified that the length of required future treatment was "highly speculative". He estimated two or three years, although his response indicated that the necessary length of time could be far less than that, or far longer. Moreover, he testified that he would "recommend" such treatment to plaintiff-appellant. Given plaintiff-appellant's rejection of treatment in the past, it seems highly uncertain whether these expenses would ever be incurred. Under these conditions, we cannot say that the district court abused its discretion in finding the costs of these future treatments too speculative to be properly included within medical expenses.

*Affirmed.*