**Nuno J. DoCARMO, etc., Plaintiff, Appellant,**

v.

**F.V. PILGRIM I. CORP., Defendant, Appellee.**

No. 79–1115.

United States Court of Appeals, First Circuit.

Argued Nov. 6, 1979.

Decided Dec. 28, 1979.

Ronald B. Horvitz, Boston, Mass., with whom Morris D. Katz and Katz & Horvitz, Boston, Mass., were on brief, for plaintiff, appellant.

Thomas E. Clinton, Boston, Mass., with whom Astrid C. Glynn and Glynn & Dempsey, Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and WYZANSKI,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Nuno J. DoCarmo, Jr., a seaman and member of the crew of the F/V PILGRIM I, was injured in the course of his employment on that vessel. The accident occurred on the high seas, more than a marine league from the nearest shore. DoCarmo was transported by Coast Guard helicopter to Cape Code Hospital in Hyannis, Massachusetts, where he was pronounced dead on arrival.

Appellant brought this action as administrator of the deceased's estate for the benefit both of the estate and the deceased's father, mother, and brother. The five count complaint was framed in terms of the Jones Act, 46 U.S.C. § 688; the Death on the High Seas Act (DOHSA), 46 U.S.C. § 761 et seq.; and general admiralty and maritime law. Appellant has focused his appeal on questions arising under the Jones Act count. Both negligence and unseaworthiness were alleged as causes of the injury and subsequent death of DoCarmo, and the jury, in answer to special interrogatories found liability based on both those theories. Responding, however, to further interrogatories, the jury determined that no recoverable damages had been sustained. In requesting that this court remand the case for a further hearing on the issue of damages, appellant emphasizes in particular the contention, rejected by the district court, that damages for loss of society, including companionship, love and affection, are properly recoverable under the Jones Act in an action brought by the survivors of

* Of the District of Massachusetts, sitting by designation.

a seaman wrongfully killed on the high seas.[1]

 The Jones Act, unlike DOHSA,[2] does not specifically limit recoverable damages to those of a pecuniary nature. The Act does, however, incorporate by reference the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, the statute providing compensation for the injury or death of railway workers. Although FELA likewise contains no explicit language limiting an award to pecuniary loss, that statute has from an early time been uniformly interpreted to thus restrict the damages recoverable. *Michigan Central R. R. v. Vreeland,* 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913); *see also* cases cited in *Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524 at 526 (5th Cir. 1979) (en banc). Drawing on the limited recovery available under FELA and that statute's incorporation into the Jones Act, courts have also consistently confined Jones Act damage awards to pecuniary loss. *E. g., Cleveland Tankers v. Tierney,* 169 F.2d 622 (6th Cir. 1948); *Igneri v. Cie de Transports Oceaniques,* 323 F.2d 257 (2d Cir. 1963), *cert. denied,* 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964); *see also* cases cited in *Ivy, supra,* slip op. at 1059 n.5. Most recently, the Fifth Circuit, sitting en banc, thoroughly reviewed the relevant authority in considering whether current developments in maritime law warrant a departure from this established rule. The court concluded that the Jones Act "does not permit the recovery in a wrongful death action of damages for loss of society of a seaman." *Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524 at 529 (5th Cir. 1979) (en banc). While we would place less reliance than did that court on the Supreme Court's recent pronouncement in *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (holding that DOHSA's exclusion of non-pecuniary damages precludes the awarding of such damages under general maritime law in a death action arising on the high seas), we entirely agree with the thrust of Judge Rubin's analysis, and hold that in an action for wrongful death on the high seas premised on the Jones Act, the deceased seaman's survivors are limited to recovering damages of a pecuniary nature.[3] We thus find no error in the district court's rulings and jury instructions so limiting damages.

---

1. The Jones Act provides

 "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

 46 U.S.C. § 688.

 The defendant-appellee filed at trial a motion in limine which requested that the district court instruct the plaintiff-appellant "not to refer in any way to damages for loss of consortium or nonpecuniary damages." The court granted the motion expressing its belief that under *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), such damages were not recoverable in "a Death-on-the-High-Seas-Act case, despite the fact that the case is also brought under the Jones Act."

2. The Death-on-the-High-Seas-Act provides, in relevant part:

 "The recovery in such suit shall be a fair and just compensation for *the pecuniary loss* sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative suit is brought."

 46 U.S.C. § 762. (Emphasis added.)

3. We think that arguments concerning any injustice alleged to be perpetrated by this rule should properly be addressed to Congress. The Supreme Court limited FELA damages to pecuniary losses in 1913, *Vreeland, supra.* Congress enacted the relevant portion of the Jones Act in 1920. The Merchant Marine Act of 1920, § 33, 41 Stat. 1007. Therefore, Congress must have been conscious that it was adopting this limitation when it explicitly incorporated by reference the FELA compensation scheme.

■ Appellant raises several other issues which may be dealt with rather briefly. Appellant charges that the jury's failure, after finding liability, to award any damages "creates an anomaly." We disagree. The jury was entitled to find on the conflicting evidence before it that DoCarmo's family had suffered no pecuniary loss as a result of the seaman's death—that based on past practices, he likely would have contributed little or nothing to his family in the future.[4]

■ Appellant argues further that the parents of a deceased seaman need not establish their dependency on the decedent in order to recover damages under the Jones Act.[5] Assuming this to be the law, see *Cleveland Tankers v. Tierney, supra,* 169 F.2d at 624, the fact remains that the jury was never instructed to the contrary. Had appellant believed the district court's instructions limiting recovery to pecuniary damages somehow implied that a finding of dependency was required (although we are unable to discover any such implication), he should have made the point by way of objection to the charge. Fed.R.Civ.P. 51. He cannot raise the contention for the first time here.

■ The jury received special interrogatories requesting "yes" or "no" answers to questions concerning negligence, seaworthiness, contributory negligence, damages and prejudgment interest. Sometime after the jury retired to deliberate, it asked the court to clarify a point on the issue of prejudgment interest.[6] The record does not indicate any response, but appellee tells us that after consulting with both counsel, the court did supply some kind of an answer. No question as to that procedure is, in any event, before us. Following receipt of the unfavorable verdict on the issue of damages, appellant moved that the district court grant a new trial, arguing among various reasons, that the "failure to make an award of damages in this action after the jury asked a question concerning the applicability of prejudgment interest to any awards they were to make is a patent demonstration that the jury did not understand its function in this case." This motion for new trial was denied; appellant now again voices his contention of jury confusion in arguing that the district court's denial of the motion was incorrect. While the jury's question may indicate some degree of uncertainty on the part of one or more jurors on the issues of prejudgment interest and

---

**4.** The jury found that DoCarmo had not suffered damages for conscious pain and suffering. This finding was not unreasonable based on the evidence presented.

**5.** The relevant section of FELA, incorporated into the Jones Act, states:

"Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . .."

45 U.S.C. § 51.

**6.** The special interrogatories were:

"(1) Was the injury and subsequent death of the decedent due to the negligence of the shipowner?

(2) Was the injury and subsequent death of the decedent due to the unseaworthiness of the vessel or any of its equipment?

(3) If so, what are the damages to the decedent's:

(a) Father and Mother

(b) Brother

(4) What is the amount of damages the jury awards for conscious pain and suffering?

(5) Was the decedent contributorily negligent?

(6) If your answer to question (5) is yes, state what percentage of the total cause of the accident is attributable to the contributory negligence of the decedent.

(7) Does the jury award prejudgment interest?

The question posed by the jury was as follows:

"Your Honor,

Pertaining to question 7, does it apply to question three (3) and four (4) only, or does it also apply to any money coming from the Jones Act, High Seas Act, or whatever?

Jurors"

the potential sources of a damages award, this does not necessarily indicate any similar uncertainty regarding the ultimate finding that no damages were sustained. That the jury might have been considering an award at the time it posed the question on interest reveals little, and is in any case beyond the scope of a court's inquiry. *See* Fed.R.Evid. 606(b). The district court was well within its discretion in refusing to grant a new trial. *See* 6A Moore's Federal Practice ¶ 59.15[3].

■ Appellant also challenges an evidentiary ruling by the district court. Appellee, during the presentation of his case called Officer Robert D. Hobson who testified as to a statement made by DoCarmo's father concerning his son's whereabouts during 1973. This evidence was received, after a lengthy bench conference, specifically as a prior inconsistent statement in order to impeach the father who, while testifying, had made a statement contrary to that offered by Hobson. At the close of appellee's case, appellant proposed to put in some so-called rebuttal evidence to negate the impact of Hobson's testimony. This purported rebuttal, however, did not go to the question of the father's consistency as a witness, but rather went to the substantive issue of DoCarmo's whereabouts. Appellant had a chance to offer this evidence during the presentation of his case in chief; we find neither abuse of discretion nor reversible error in the court's unwillingness to permit appellant to reopen his case so as to allow that evidence, disguised as rebuttal testimony, to come in. *See* Fed.R.Evid. 403.

*The judgment of the district court is affirmed.*