**Philip A. ROLLINS, As the Personal Representative of the Estate of Alison Rollins; Priscilla Rollins, Individually, Plaintiffs,**

v.

**PETERSON BUILDERS, INC., Defendant,**

**The United States of America; the Board of Governors for Higher Education, Defendants, Third Party Plaintiffs,**

v.

**JOHN W. GILBERT ASSOCS., INC., Third Party Defendants.**

**Civ. A. No. 88–0482P.**

United States District Court, D. Rhode Island.

May 2, 1990.

On Motion for Reconsideration Jan. 10, 1991.

John T. Walsh, Jr., Providence, R.I., for plaintiffs.

Howard E. Walker, Hinckley, Allen, Snyder & Comen, Providence, R.I., for Peterson Builders.

Irving A. Pianin, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Suzanne G. Curt, Asst. U.S. Atty., Providence, R.I., for U.S.

Berndt W. Anderson, Roberts, Carroll, Feldstein & Peirce, Providence, R.I., Louis Saccoccio, Mary Kennard, Gen. Counsel, University of Rhode Island, Kingston, R.I., for Bd. of Governors.

Barbara S. Cohen, Goldenberg & Muri, Providence, R.I., Augustus F. Wagner, Jr., Nutter, McClennen & Fish, Hyannis, Mass., Leonard W. Langer, Marshall J. Tinkle, Thompson, McNaboe, Ashley & Bull, Portland, Me., for John W. Gilbert Associates, Inc.

## OPINION

PETTINE, Senior District Judge.

Alison Rollins, the daughter of Philip and Priscilla Rollins, died after being electrocuted while working on board the research vessel "Endeavor." The United States owned, the Board of Governors for Higher Education leased, Peterson Builders built, and John W. Gilbert Associates designed the ship. Alison's parents sue the Board under the Jones Act, 46 U.S.C.App. § 688 (1982),[1] for negligence; the United States under the general maritime law for the unseaworthiness of the "Endeavor" and under the Public Vessels Act, 46 U.S.C. App. §§ 781–90 (1982) and Suits in Admiralty Act, 46 U.S.C.App. §§ 741–52 (1982); and Peterson under diversity and the general maritime law for unseaworthiness and products liability. The Board and the United States filed a third party complaint against Gilbert for contribution and indemnity.

The Rollins want damages for funeral expenses and the loss of Alison's society and services; Mrs. Rollins seeks compensation for defendants' alleged negligent infliction of emotional harm; Mr. Rollins, as administrator of Alison's estate, seeks damages for Alison's pain and suffering and the loss of Alison's future income due to her death. The parents also ask for punitive damages against Peterson Builders and the Board of Governors.

Defendants contest, through their motions in limine, the Rollins' ability to recover damages for loss of society, intentional infliction of emotional harm, and loss of Alison's future wages. The parties have agreed to a statement of facts to guide this Court as it rules on defendants' motions.[2] Applying those facts and the applicable law, this Court finds that plaintiffs cannot receive compensation for Mrs. Rollins' emotional injury or for Alison's lost future wages. They can, however, recover damages under general maritime law for the loss of their daughter's society.

## I. ALISON'S ACCIDENT ON THE "ENDEAVOR"

The "Endeavor" docked at its home port of Narragansett, Rhode Island, on August 11, 1986. Mrs. Rollins met the ship, as she had done on many prior occasions when it returned home, and spoke with Alison. Alison told Mrs. Rollins she would see her after she had finished her duties on board.

Alison lived with her mother in Mashpee, Massachusetts, when she was not at sea. She was the natural child of Mr. and Mrs. Rollins and, at the time of her death, was 22 and single. She had never been married and had no children. She had a close and loving relationship with her father and mother. Her parents were separated. Both of them had full time jobs. Neither had received, nor in the future expected to receive, any financial contributions from Alison.

After talking with her mother, Alison proceeded to hook up the ship-to-shore power connection for the "Endeavor." Once the connection is made, the crew can shut down the ship's generators. The ship-to-shore connection is a power cable that con-

---

**1.** The Jones Act reads:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for the death in the case of railway

employees shall be applicable. Jurisdiction in such action shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C.App. § 688 (1982).

Alison was protected by the Jones Act. Her death occurred during the course of her duties as a member of the "Endeavor's" crew and in the territorial waters of the United States.

**2.** This Court assumes the truth of the facts contained in the parties' statement only for the purpose of deciding the motions in limine before it. The parties remain free to prove or disprove the truth of the stated facts at trial.

nects an electrical connection box on shore with one on the ship. On the day it docked, the "Endeavor's" cable had a plug and receptacle connecting the cable to the shore box and a lug and bus bar configuration connecting it to the ship's box.

Alison was electrocuted while she was connecting the power cable to the ship's box. No one saw or heard the accident, which probably happened a few minutes after 10:00 AM. The ship's box is in its muffler room, a steel-enclosed compartment located in the forward part of the vessel. Mrs. Rollins was on the dock when the power cable was connected; she saw the shore connection take place. About a half hour later, after the "Endeavor" cleared customs, Mrs. Rollins boarded the vessel to wait for her daughter in the ship's mess deck area.

She was there with some members of the crew when Alison was first missed. A search began and soon the crew discovered Alison in the muffler room, leaning into the ship's electrical connection box. It was now after 11:00 AM. Some crew members shouted "Alison's been hit with electricity" and "it's serious!" They tried to revive her to no avail; she had died well before she was discovered.

Mrs. Rollins arrived at the muffler room a few minutes after the crew found Alison. By that time, Alison had been laid out on the deck outside the muffler room. Mrs. Rollins may have seen Alison's visible injuries, the severe burns along one side of her face and on both her hands, caused by the electrocution. Mrs. Rollins did see the crew administer CPR to Alison and watched Alison being loaded onto an ambulance. Understandably distraught, she said "my baby, my baby" as Alison was removed from the ship on a stretcher.

Since Alison's death, Mrs. Rollins has experienced chest pains, sleeplessness, loss of weight, and persistent emotional and psychological anxiety. She has visited an internist and heart doctor and has consulted with a psychologist.

## II. DAMAGES UNDER THE JONES ACT AND GENERAL MARITIME LAW

■ Plaintiffs wishing to sue for the death of their seaman-relative in territorial waters have two remedies available: The Jones Act provides a remedy for the death of seaman caused by negligence; the judicially created remedy under the general maritime law, *see Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), provides a remedy for deaths due to unseaworthiness. Because Jones Act and *Moragne* suits are wrongful death actions, the decedent's personal representative sues on behalf of the beneficiaries to recover the damages they sustained from the death of their relative.[3] Survival actions can be maintained under the general maritime law and the Jones Act. *See, e.g., Miles v. Melrose*, 882 F.2d 976, 986 (5th Cir.1989) (Jones Act), *cert. granted*, —— U.S. ——, 110 S.Ct. 1295, 108 L.Ed.2d 472 (1990); *Barbe v. Drummond*, 507 F.2d 794, 799 (1st Cir.1974) (*Moragne* action).

## A. DEPENDENCY IN ADMIRALTY LAW

■ Defendants argue that, because the Rollins were not dependent on Alison, they cannot maintain an action under either the Jones Act or the general maritime law. Defendants argument disregards the plain language of the Jones Act and the uncontroverted decisional authority animating the general maritime law. The Jones Act incorporates the Federal Employers' Liability Act ("FELA"), *see supra* note 1, and adopts FELA's beneficiaries schedule and remedies. Under FELA, a personal repre-

---

**3.** Wrongful death suits allow beneficiaries to recover for losses suffered by them; survival suits allow the decedent's estate to recover on claims the decedent would have had but for his death. *See Sea–Land Servs., Inc. v. Gaudet,* 414 U.S. 573, 575 n. 2, 94 S.Ct. 806, 810 n. 2, 39 L.Ed.2d 9 (1974); *Miles v. Melrose,* 882 F.2d 976, 985 (5th Cir.1989), *cert. granted,* —— U.S. ——,

110 S.Ct. 1295, 108 L.Ed.2d 472 (1990); W. Prosser, *Prosser on Torts* § 127 at 902 (4th ed. 1971) [hereinafter *Prosser on Torts* ]. The common law allowed neither action; it "followed the rule that personal tort actions died with the plaintiff." *Miles,* 882 F.2d at 985; *see Prosser on Torts, supra,* § 126 at 898.

sentative sues for the benefit of "the surviving widow or husband and children òf [the] employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part" from defendant's negligence. 45 U.S.C.App. § 51. The language of the statute makes it clear that parents do not have to prove dependency in order to maintain a suit under the Jones Act. "Dependent" modifies only "next of kin." A natural reading would be that only next of kin who are not the parents, surviving spouse, or children need prove their dependency. *See Cleveland Tankers v. Tierney,* 169 F.2d 622, 624 (6th Cir.1948); 2 *Benedict on Admiralty* § 85, at 7–41 (7th ed. 1988); 1 S. Speiser, *Recovery for Wrongful Death* § 3:34, at 264 (2d ed. 1975). The First Circuit appears to agree, although it has not directly faced the issue. *See DoCarmo v. F.V. Pilgrim I. Corp.,* 612 F.2d 11, 14 (1st Cir.1979) ("Appellant argues further that the parents of a deceased seaman need not establish their dependency on the decedent in order to recover damages under the Jones Act. Assuming this to be the law, the fact remains that the jury was never instructed to the contrary."), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980).

■ *Moragne* did not specify the beneficiaries who could maintain a suit under the general maritime law. *See Moragne,* 398 U.S. at 408, 90 S.Ct. at 1791. Subsequent decisions have applied beneficiaries schedule in the Death on the High Seas Act ("DOHSA"),[4] which is more generous than the FELA schedule. *See Benedict on Admiralty, supra,* § 85 at 7–42 & n. 8. Par-

ents need not prove dependency to be beneficiaries under the DOHSA schedule. *See* 46 U.S.C.App. § 761 (1982) (personal representative sues on behalf of "the decedent's wife, husband, parent, child, or *dependent relative*" (emphasis added)).

■ If Alison had made any financial contributions to her parents, or her parents expected such contributions in the future, those contributions would have controlled the amount of damages for loss of support the Rollins could have received under the Jones Act and the general maritime law. *Cook v. Ross Island Sand & Gravel Co.,* 626 F.2d 746, 748 (9th Cir.1980); *Cleveland Tankers, Inc.,* 169 F.2d at 624. Alison, however, did not contribute to her parents financially; loss of support, had the Rollins sought such damages, would have been denied.

### B. LOSS OF SOCIETY

Defendants also argue that because Alison did not financially contribute to her parent's support, her parents should not be allowed to recover damages under the general maritime law for the loss of Alison's society.[5] They claim that the Supreme Court, in *Moragne* and *Gaudet,* created a wrongful death action for dependents only and, following the Court's lead, the Fifth Circuit has refused to allow nondependent parents to recover for the loss of their child's society. *See Miles,* 882 F.2d at 987–89.

Defendants' reliance on the Supreme Court's language is misplaced. The Court in *Moragne,* though it did not decide the question,[6] did speak of whether a "depend-

---

4. DOHSA creates a statutory remedy for wrongful deaths that occur outside the territorial waters of the United States. *See Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 620, 98 S.Ct. 2010, 2012, 56 L.Ed.2d 581 (1978).

5. The Rollins can only recover for loss of society under the general maritime law. Because the Jones Act is limited to pecuniary damages and loss of society is not a pecuniary recovery, loss of society is not an element of Jones Act damages. *Nygaard v. Peter Pan Seafoods, Inc.,* 701 F.2d 77, 79 (9th Cir.1983); *DoCarmo,* 612 F.2d at 13; *Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524, 529 (5th Cir.1979) (en banc), *cert. denied,*

446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). The same argument holds for DOHSA, which limits beneficiaries to recovery of pecuniary losses. *See* 46 U.S.C.App. § 762 ("The recovery ... shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought....").

6. *Moragne* explicitly left the determination of the proper beneficiaries in a maritime wrongful death suit to "further sifting through the lower courts in future litigation." *Moragne,* 398 U.S. at 408, 90 S.Ct. at 1791.

ent should be permitted to recover for the injury he suffers from the victim's death," *Moragne*, 398 U.S. at 385, 90 S.Ct. at 1779, and in *Gaudet* did state "the policy underlying the [*Moragne*] remedy is to insure compensation of the dependents for *their* losses resulting from the decedent's death." *Gaudet*, 414 U.S. at 583, 94 S.Ct. at 814. The Court in both cases, however, faced a suit by the decedent's dependents. In neither case did the Court address the availability of a *Moragne* action to a nondependent parent, the issue in this case. As Chief Justice Marshall stated, "[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.... The question actually before the court is investigated with care and considered in its full extent. Other principles, which may serve to illustrate it, are considered in their relation to the case decided." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399–400, 5 L.Ed. 257 (1821), *quoted in Sistrunk v. Circle Bar Drilling Co.*, 770 F.2d 455, 460 n. 4 (5th Cir.1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986). This Court is not constrained by the mere mention of "dependents" in *Moragne* and *Gaudet* when that language is tied to facts not present here.

Furthermore, the very concept of "loss of society" leads this Court to allow the Rollins to recover for the loss of Alison's society. "The term 'society' embraces a broad range of mutual benefits *each family member* receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection." *Gaudet*, 414 U.S. at 585, 94 S.Ct. at 815. Loss of support is easily quantifiable as the economic loss of the decedent's contributions; when the decedent contributes nothing, the beneficiaries cannot show any economic loss and cannot recover for loss of support. *See supra.* Loss of society, in contrast, is decidedly not an economic loss tied to the decedent's contributions. *See Gaudet*, 414 U.S. at 586, 94 S.Ct. at 815. The degree to which the beneficiary depends on the decedent's financial contribution simply has no bearing on the amount of damages the benefi-

ciary can recover for loss of the decedent's society. *See Thompson v. Offshore Co.*, 440 F.Supp. 752, 764–65 (S.D.Tex.1977); *Palmer v. Ribax, Inc.*, 407 F.Supp. 974, 979 (M.D.Fla.1976).

Finally, limiting recovery for loss of society to dependent parents would not, as defendants argue, further the aims of the general maritime law identified in *Gaudet* and *Moragne*. *Gaudet* allowed a dependent widow to recover for the loss of her husband's society caused by his death at sea. *See Gaudet*, 414 U.S. at 587–90, 94 S.Ct. at 816–17. The Court found that such an award would further *Moragne*'s policies of promoting uniformity between the general maritime law and state wrongful-death statutes, *see id.* at 587, 94 S.Ct. at 816 ("[O]ur decision ... aligns the maritime wrongful-death remedy with a majority of state wrongful-death statutes."), and of showing " 'special solicitude' for those who are injured within [the] jurisdiction [of the general maritime law]." *Id.*

Defendants contend, citing *Miles*, that, because the Jones Act and DOHSA do not allow the Rollins to recover for loss of society, the Rollins should not be allowed to recover under the general maritime law. *Miles* held that nondependent parents could not recover for the loss of their child's society. *See Miles*, 882 F.2d at 989. The Fifth Circuit in *Miles* supported its holding with the same principles the Court used in *Gaudet:* uniformity and the general maritime law's special solicitude for seaman. *See id.* at 987–88. In doing so, however, *Miles* misconstrued Supreme Court precedent.

Uniformity with the Jones Act is not a decisive factor in the Court's analysis. The Court recognized in *Gaudet* that it was creating a remedy for loss of society for a dependent widow that was unavailable under other admiralty laws. *See Gaudet*, 414 U.S. at 588 n. 22, 94 S.Ct. at 816 n. 22. It argued, however, that " 'Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law.' " *Id.* (quoting *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963)).

Turning its attention to DOHSA, the Court found that the Act's legislative history did not show that Congress preempted "any additional elements of damages for a maritime wrongful-death remedy which this Court might deem 'appropriate.'" *Id.*

Later, addressing the Jones Act specifically, the Court argued that the Act did not preclude an award for loss of society damages under the general maritime law. *See American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 283, 100 S.Ct. 1673, 1678, 64 L.Ed.2d 284 (1980) (plurality opinion). The Court did not view the Jones Act as "the product of careful drafting or attentive legislative review.... Thus, a remedial omission in the Jones Act is not evidence of considered congressional policymaking that should command our adherence in analogous contexts." *Id.* at 283–84, 100 S.Ct. at 1678–79.

*Miles* also found that awarding loss of society damages to nondependent parents would not promote uniformity with state wrongful-death statutes. It contended, "State wrongful death statutes take a variety of approaches to whether nondependent parents may recover for loss of society: some deny recover for all nonpecuniary injuries, some deny recovery for all loss of society claims, and some allow recovery for loss of society, but only for that of minor children." *Miles*, 882 F.2d at 988 (footnotes omitted). Because *Gaudet* found that awarding loss of society damages under the general maritime law would accord with the law in the majority of states, the proper focus is whether nondependent parents can recover in those states that allow loss of society damages. While a minority of states do limit loss of society damages to minor children, most states do not. *See* 2 S. Speiser, *supra*, App. A (collecting state statutes). Awarding loss of society damages to nondependent parents is not precluded by analogous state law. *See id.* § 3:49 at 313–19, § 3:50 (financial contribution not included in elements of proof for loss of society).[7]

This Court also cannot accept *Miles* argument that the special solicitude of the general maritime law does not support an award to the Rollins for the loss of Alison's society. *Gaudet* and *Alvez* already determined that such solicitude warrants an award of loss of society damages to a spouse of seaman who is injured or killed. It is a small step indeed to find that the same solicitude should extend to the parents of a deceased seaman who dies without surviving spouse or children.

*Miles* reasoned that an award for loss of society could impermissibly expand the class of potential beneficiaries; "aunts and uncles, nieces and nephews, even friends and lovers," *see Miles*, 882 F.2d at 989, would bring a suit for loss of their decedent's society if nondependent parents could recover loss of society damages. That concern, however, is not sufficiently grave to dissuade this Court from allowing the Rollins to sue for loss of society damages. The constraints of a *Moragne* suit and the "good sense and deliberate judgment" of the courts, *see Gaudet*, 414 U.S. at 590, 94 S.Ct. at 817, will surely avoid any potential abuse. Those classes of relatives and other persons identified by *Miles* either cannot be beneficiaries (in the case of nonrelatives) or can be beneficiaries (in the case of collateral relatives) only if they show dependency. Most of them could not, therefore, benefit from a *Moragne* suit; a *Moragne* suit can only be brought for the benefit of "the decedent's wife, husband, parent, child, or *dependent* relative." *See supra*.

Finally, this Court finds that allowing the Rollins to recover would reflect the Supreme Court's concern that " 'it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.'" *Moragne*, 398 U.S. at 387, 90 S.Ct. at 1780 (quoting *The Sea Gull*, 21 F.Cas. 909 (No. 12,573) (C.C.Md.1865).

7. Moreover, at least sixteen states that provide by statute for loss of society damages do not limit such damages to dependent parents. *See* 2 S. Speiser, *supra*, App. A.

## C. LOSS OF FUTURE EARNINGS

■ The Rollins cannot recover Alison's loss of future earnings in a Jones Act or a *Moragne* wrongful death suit. *See Evich v. Morris*, 819 F.2d 256, 258 (9th Cir.), *cert. denied*, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987); *Thompson*, 440 F.Supp. at 763. The economic loss suffered by the decedent enters into the determination of the beneficiaries' loss of support from the decedent's death. Compensation for loss of support is limited to the amount of money decedent had, and would have, contributed from his future earnings to the support of the beneficiaries. *See, e.g., DoCarmo*, 612 F.2d at 14.

The same argument holds true for a *Moragne* suit. Under the general maritime law, a beneficiary can receive compensation for loss of support. *See, e.g., Gaudet*, 414 U.S. at 584–85, 94 S.Ct. at 814–15. Loss of support is the amount, out of the decedent's lost future earnings, the decedent would have contributed to his beneficiaries. *See, e.g., id.* at 592, 94 S.Ct. at 818.

The Rollins contend, however, that they can seek compensation for Alison's loss of future earnings as part of an award to her estate in a survival suit under both the Jones Act and *Moragne*. They argue, correctly, that a survival action is different from a wrongful death action, *see id.* at 576 n. 2, 94 S.Ct. at 810 n. 2, and, because a survival action allows the decedent's estate to recover for the decedent's damages, Alison's estate can recover for her lost future earnings.

■ A seaman's estate can maintain an action under either the Jones Act or *Moragne* for certain damages suffered by the decedent. Damages available in such an action are those normally recoverable under prevailing states' survival statutes. Most states allow a survival action for pain and suffering. *See* 2 S. Speiser, *supra*, § 14:8 at 430. Courts, including the First Circuit, interpreting the Jones Act and general maritime law, have followed suit. *See Barbe*, 507 F.2d at 799.

In contrast, states do not speak with one voice as to an award of lost future wages. Some do not allow any recovery; others allow recovery of only those wages lost between the time of injury and the time of death; others allow the recovery of some portion of wages lost after death. *See* 2 S. Speiser, *supra*, § 14:7. The majority rule allows recovery of damages from the time of injury to the time of death. *See* 3 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, *Damages in Tort Actions* §§ 21.21, 21.22 (1988); *see also Evich*, 819 F.2d at 258 ("[T]he majority of states do not allow future economic loss to be recovered in survival actions."). Therefore, to award Alison's estate damages for her economic loss after her death would not align a maritime survival action with the majority rule in the states. *Cf. Gaudet*, 414 U.S. at 587–88, 94 S.Ct. at 816–17. This Court assumes, from the circumstances surrounding Alison's death, that the amount of damages for Alison's lost wages between the time of her injury and the time of her death would be negligible.

Only *Evich* and *Muirhead v. Pacific Inland Navigation Inc.*, 378 F.Supp. 361 (W.D.Wash.1974) have awarded damages for lost future wages in a survival action under the general maritime law. Neither case leads this Court to award similar damages to Alison's estate. In *Evich*, the Ninth Circuit recognized that uniformity would not be served by allowing recovery for future economic losses. *See Evich*, 819 F.2d at 258. Nevertheless, the court, without analysis, found "recovery here 'better becomes the humane and liberal character of proceedings in admiralty' and prevents the anomaly of rewarding a petitioner for killing his victim rather than injuring him." *Id.* (quoting *Moragne*, 398 U.S. at 387, 90 S.Ct. at 1780).

In *Muirhead*, the district court argued that awarding the decedent's estate damages for lost future wages would promote uniformity because under the law prior to *Moragne*, the estate could have recovered such damages. *See Muirhead*, 378 F.Supp. at 363. Before *Moragne*, a seaman's estate could recover lost future wages if the seaman died in territorial waters and the state contiguous to those waters allowed such damages. The decedent in *Muirhead*

having died in the territorial waters off the state of Washington, the court applied Washington law and allowed the decedent's estate to recover his lost wages. *See Muirhead,* 378 F.Supp. at 362–63.

This Court declines to follow the lead of *Evich* and *Muirhead.* The approach of both courts would not promote uniformity of the general maritime law with state law. *See supra.* Moreover, such an award would allow the Rollins, who cannot recover for the loss of Alison's support, to receive analogous damages through Alison's estate. This Court cannot allow the Rollins to circumvent the structure of the general maritime law and the Jones Act.

### D. MRS. ROLLINS' CLAIM FOR EMOTIONAL DISTRESS

Priscilla Rollins sues in her own right to recover for defendants' alleged negligent infliction of emotional distress. Defendants attack Mrs. Rollins cause by arguing that no court has allowed a claim for negligent infliction of emotional distress under the general maritime law or the Jones Act, and that, under the prevailing common law, Mrs. Rollins cannot recover because she did not witness Alison's electrocution and death.

■ Mrs. Rollins cannot recover under the Jones Act. *Gaston v. Flowers Trans.,* 866 F.2d 816 (5th Cir.1989), and *Kiffe v. Neches–Gulf Marine, Inc.,* 709 F.Supp. 743 (E.D.Tex.1989), rejected claims by seaman under the Jones Act for the alleged negligent infliction of emotional distress caused by seeing another seaman killed. In *Gaston,* the claim was brought by the dead seaman's half-brother who served on the same ship; in *Kiffe,* a fellow seaman who was not related brought the suit.

*Gaston,* recognizing the paucity of precedent under the Jones Act for bystander liability, analyzed the plaintiff's claim by looking to analogous FELA case law. It found that courts had rejected FELA claims for purely emotional injury, injury unaccompanied by physical contact or the threat of such contact. *See Gaston,* 866 F.2d at 819. *But see Taylor v. Burlington N. R.R.,* 787 F.2d 1309, 1313 (9th Cir.1986) (allowing recovery for purely emotional injury). However, the FELA cases concerned actions by the defendant directed at the plaintiff. In *Gaston,* and here, the defendant's actions were not "directed" at plaintiff; they injured a third party and plaintiff was a "bystander." *Gaston,* 866 F.2d at 819. Therefore, the Fifth Circuit concluded that to allow damages for the plaintiff in *Gaston* would require "two significant innovations." First, the Jones Act would have to cover purely emotional damages; second, the Act would have to compensate for injuries that did not "result[ ] from physical trauma to the plaintiff, or even from his fear of such trauma to himself." *Id.* at 819. *Gaston* also found that under the common law, the plaintiff could not recover because he was not in the "zone of danger" when the accident occurred. *See id.* at 820. *Kiffe* followed *Gaston* in holding that the Jones Act could not compensate a seaman for purely emotional injuries and that, under the common law, a plaintiff who was not related to the decedent could not recover for the emotional distress in witnessing the decedent's accident. *See Kiffe,* 709 F.Supp. at 744–45.

This Court is similarly unwilling to extend the Jones Act to cover purely emotional injuries of a bystander. First, Mrs. Rollins, unlike the plaintiffs in *Gaston* and *Kiffe,* is not a seaman protected by the Act. The Act only provides recovery for seaman suing for their injuries or beneficiaries suing for the pecuniary loss caused by an injury to their seaman-relative. *See supra.* Mrs. Rollins cannot sue, as she does here, for her own injuries. Second, no court has allowed such damages under the same, or analogous, circumstances. This Court declines to be a pioneer. Finally, Mrs. Rollins cannot recover for her injury under prevailing law in the states. *See infra* (discussing *Dillon* ).

■ Arguing against Mrs. Rollins' recovery in a *Moragne* action, defendants do not press what to this Court is a troublesome issue: Even if Mrs. Rollins satisfies the common law requisites for recovery, does the general maritime law allow her, as a beneficiary, to recover for negligent inflic-

tion of emotional harm? This Court holds that Mrs. Rollins cannot do so. In *Gaudet*, the Court stated that a beneficiary could not recover damages for "mental anguish or grief" in a *Moragne* action. *See Gaudet*, 414 U.S. at 585 n. 17, 94 S.Ct. at 815 n. 17. The Court reasoned that such an injury represents not a "loss of positive benefits" that might be compensated under the general maritime law, but "an emotional response to the wrongful death." *Id.* Quoting Speiser, the Court continued that permitting recovery for "mental anguish or grief" involves "the issue of compensating [beneficiaries] for their harrowing experience resulting from the death of a loved one.... The fundamental question ... is what deleterious effect has the death, as such, had upon the claimants: In other areas of damages, we focus on more positive aspects of the injury *such as what would the decedent, had he lived, have contributed in terms of support, assistance, training, comfort, consortium, etc."* *Id.* (emphasis added).

Other courts have followed the lead of *Gaudet* and rejected awards for similar injuries. *See Cook*, 626 F.2d at 749 (not allowing damages for "grief, bereavement, anxiety, distress, or mental pain and suffering of a decedent's beneficiaries" under the Jones Act); *Thompson*, 440 F.Supp. at 765 (damages not allowed under either Jones Act or general maritime law); *see also* 7 *Benedict on Admiralty* § 86 at 7–50 to 7–51 (same). In *DeLoach v. Companhia de Navegacao Lloyd Brasileiro*, 782 F.2d 438 (3d Cir.1986), the plaintiff sued for emotional distress caused by seeing the crippling injuries of his father, who had been hurt while unloading a ship in the Port of Philadelphia. *See id.* at 439. Drawing on the Court's language in *Gaudet*, *DeLoach* held that the plaintiff could not seek damages for mental distress under the general maritime law. *See id.* at 443 ("[N]o federal statutory or decisional law provides for such a cause of action.").[8] Given such persuasive decisional authority, this Court holds that Mrs. Rollins cannot recover damages for negligent infliction of emotional distress.

▮ Alternatively, this Court finds that recovery would be inappropriate because Mrs. Rollins cannot satisfy the requisites for recovery for negligent infliction of emotional distress. Both defendants and the Rollins analyze Mrs. Rollins' claim under Rhode Island law. While this Court, faced with a question unanswered under the general maritime law, may look to state law for guidance,[9] it is not restricted to applying Rhode Island law. "[T]he source and substance of maritime law is federal and independent," *Nelson v. United States*, 639 F.2d 469, 474 (9th Cir.1980), and the general maritime law incorporates the general principles of negligence law. *See Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir.1980).

In *D'Ambra v. United States*, this Court adopted the criteria of *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968),[10] in holding that a mother who wit-

---

**8.** *DeLoach* also analyzed the plaintiff's claim under the common law, holding that the plaintiff could not recover, even under the most "expansive holdings" of state courts interpreting *Dillon v. Legg*, when he did not witness his father's accident or come onto the scene shortly after the accident. *See DeLoach*, 782 F.2d at 443.

**9.** *See Gaston*, 866 F.2d at 820; *Kiffe*, 709 F.Supp. at 744–45; *Petition of Risdal & Anderson, Inc.*, 291 F.Supp. 353, 360–61 (D.Mass.1968); *see also Moragne*, 398 U.S. at 406, 90 S.Ct. at 1790 ("In most respects, the law applied in personal-injury cases will answer all questions that arise in death cases [under the general maritime law]."). *Cf. Gaudet*, 414 U.S. at 587–90, 94 S.Ct. at 816–17 (looking to state law for guidance in allowing damages for loss of society in *Moragne* action).

**10.** A significant and growing number of states have adopted the *Dillon* rule. *See Tommy's Elbow Room, Inc. v. Kavorkian*, 727 P.2d 1038, 1042 (Alaska 1986); *Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968); *Champion v. Gray*, 478 So.2d 17, 20–21 (Fla.1985); *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 765 (1974); *Barnhill v. Davis*, 300 N.W.2d 104, 106–07 (Iowa 1981); *Lejeune v. Rayne Branch Hosp.*, 556 So.2d 559, 570 (La.1990); *Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433, 436 (Me.1982); *Dziokonski v. Babineau*, 375 Mass. 555, 380 N.E.2d 1295, 1302–03 (1978); *Toms v. McConnell*, 45 Mich.App. 647, 207 N.W.2d 140, 144 (1973); *Entex v. McGuire*, 414 So.2d 437, 444 (Miss.1982); *Versland v. Caron Trans.*, 206 Mont. 313, 671 P.2d 583, 586–87 (1983); *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109, 114–15 (1985); *State v. Eaton*, 101 Nev. 705, 710 P.2d

nessed a defendant running over her child, but was not herself endangered, could recover damages for emotional distress. *See* 354 F.Supp. 810, 819, 822 (1973).

In *Dillon,* the California Supreme Court recognized that awarding damages to a bystander for emotional damages caused by an injury to another person rested on whether a duty existed on the part of the defendant towards the bystander-plaintiff. The question of duty turned on a court's determination of whether the defendant could have foreseen that the plaintiff would have suffered emotional harm because of the injury to the third person. *Dillon* fashioned three criteria to guide courts:

> In determining ... whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following:
>
> (1) Whether plaintiff was located *near the scene of the accident* as contrasted with one who was a distance away from it.
>
> (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and *contemporaneous observance* of the accident, as contrasted with learning of the accident from others after its occurrence.
>
> (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Dillon,* 69 Cal.Rptr. at 80, 441 P.2d at 920 (emphasis added). Applying those criteria to the facts of *Dillon,* the California court found that a mother, who had witnessed a car running over and killing her daughter, could recover for the emotional injury that accident caused her.

The First Circuit affirmed *D'Ambra,* after certifying the question of recovery for emotional distress to the Rhode Island Supreme Court. *See D'Ambra v. United States,* 518 F.2d 275 (1st Cir.), *cert. denied,* 414 U.S. 1075, 94 S.Ct. 592, 38 L.Ed.2d 482 (1973). In so holding, the First Circuit emphasized that the plaintiff must witness the accident in order to recover. *See id.* at 277. Other courts, including the Rhode Island Supreme Court, have agreed. *See, e.g., Thing v. La Chusa,* 48 Cal.3d 644, 771 P.2d 814, 828, 257 Cal.Rptr. 865, 879 (1989) (refusing recovery under *Dillon* because plaintiff did not "personally and contemporaneously perceive the injury-producing event and its traumatic consequences"); *Culbert,* 444 A.2d at 438 (holding plaintiff must witness accident); *Caparco v. Lambert,* 121 R.I. 710, 402 A.2d 1180, 1181–82 (1979) (rejecting recovery under *D'Ambra* because "Mrs. Caparco did not witness [her daughter's] accident"); *see also Plummer v. Abbott Labs.,* 568 F.Supp. 920, 923–25 (D.R.I.1983) (interpreting *D'Ambra* and *Caparco* as requiring the plaintiff to witness the injury-producing accident).

■ Mrs. Rollins cannot therefore recover damages under the common law for the emotional distress caused by witnessing the aftermath of her daughter's electrocution. She did not see the accident. When it occurred in the muffler room of the "Endeavor," she was still on the dock, waiting to board the ship. The crew did not discover Alison until an hour after her accident; it was several minutes later that Mrs. Rollins arrived on the scene.

## III. CONTRIBUTION, INDEMNITY, AND PUNITIVE DAMAGES

■ Punitive damages can be awarded under the general maritime law for actions that are "intentional, deliberate or so wanton and reckless as to demonstrate a con-

1370, 1376 (1985); *Corso v. Merrill,* 119 N.H. 647, 406 A.2d 300, 306–07 (1979); *Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521, 526 (1980); *Ramirez v. Armstrong,* 100 N.M. 538, 673 P.2d 822, 825–26 (1983); *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759, 766–67 (1983); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672, 686 (1979); *D'Ambra v. United States,* 114 R.I. 643, 338 A.2d 524, 530

(1975); *Kinard v. Augusta Sash & Door Co.,* 286 S.C. 579, 336 S.E.2d 465, 467 (1985); *Freeman v. City of Pasadena,* 744 S.W.2d 923, 923–24 (Tex. 1988); *Gates v. Richardson,* 719 P.2d 193, 199 (Wyo.1986); *Asaro v. Glennon Mem. Hosp.,* No. 56454, 1990 W.L. 2360 at 13 (Mo.Ct.App. Jan. 16, 1990).

scious disregard of the rights of others." *Muratore v. M/S SCOTIA PRINCE*, 845 F.2d 347, 354 (1st Cir.1988). Plaintiffs may not be able to recover punitive damages under the Jones Act. *Compare Evich*, 819 F.2d at 258 and *Kopczynski v. The JACQUELINE*, 742 F.2d 555, 560–61 (9th Cir. 1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985) (punitive damages not available) *with In re Merry Shipping, Inc.*, 650 F.2d 622, 626 (5th Cir.1981) (reserving judgment on the issue). *Cf. Kozar v. Chesapeake & Ohio Ry.*, 449 F.2d 1238, 1240–43 (6th Cir.1971) (punitive damages not available under FELA).[11]

The United States and the Governing Board filed a third party complaint for contribution and indemnity against Gilbert for any damages the Rollins successfully recover. The defendants contend that they can receive contribution and indemnity for punitive damages; Gilbert retorts that no contribution or indemnity can be had for punitive damages.

■ Given the policies supporting punitive damages, contribution and indemnity cannot be maintained for such awards. Punitive damages are not compensatory; they are awarded to punish the wrongdoer for its actions and to deter it and others from similar acts. *See Daughdrill v. Ocean Drilling & Exploration Co.*, 665 F.Supp. 477, 481–82 (E.D.La.1987); *Pyramid Condominium Ass'n v. Morgan*, 606 F.Supp. 592, 599 (D.Md.1985). Assuming *arguendo, see supra* note 11, that the Rollins can recover punitive damages against the United States and the Governing Board, they can do so only on the basis of the defendants' own actions. The United States and the Governing Board, given the absence of any contractual agreement or special relationship with Gilbert, cannot be liable for punitive damages based on Gilbert's wilful and wanton acts.

Indemnity and contribution would subvert the purposes of punitive damages. *See Daughdrill*, 665 F.Supp. at 481–82; *Haas v. Tishman Construction Corp.*, No. 83 Civ. 7601, 1987 W.L. 5792 at 11 (S.D.

N.Y. Jan. 13, 1987). Either would allow a party to shift the cost of its egregious conduct to another party not responsible for such conduct. Punitive damages are based on the culpability of an individual party and should be borne by that party.

## IV. CONCLUSION

For the above reasons, this Court holds that the Rollins can receive compensation for the loss of Alison's society, Alison's estate cannot recover damages for Alison's lost future wages, Mrs. Rollins cannot maintain an action for negligent infliction of emotional harm, and the United States and the Governing Board cannot receive indemnity and contribution from Gilbert for punitive damages.

## ON MOTION FOR RECONSIDERATION

An opinion dated May 2, 1990 allowed the plaintiffs to seek damages for their decedent daughter's loss of society. The defendants now move for reconsideration of my ruling and request that I strike this claim from the complaint.

■ No objection having been filed pursuant to Rule 12(a)(2) of the Local Rules of this Court I could consider summarily granting this motion. However, apart from this procedural defect it must be granted on its merits. The United States Supreme Court in *Miles v. Apex Marine Corp.*, — U.S. —, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) affirmed the Fifth Circuit's holding that a non-dependent parent may not recover for loss of society in a general maritime wrongful death action. It follows that my May 2, 1990 holding is in error and must be and is hereby held invalid.

The defendants' February 1990 motion in limine to strike the claim in question, which was denied in the aforesaid May 2, 1990 opinion is now granted.

SO ORDERED.

---

11. Plaintiffs have not briefed the issues of punitive damages under the Jones Act or the United States' liability for punitive damages. This

Court reserves judgment on those issues until the parties more fully brief them.