Philip A. ROLLINS, as the personal representative of the Estate of Alison Rollins; Priscilla Rollins, Individually, Plaintiffs,

v.

PETERSON BUILDERS, INC., Defendant,

The United States of America; The Board of Governors for Higher Education, Defendants and Third Party Plaintiffs,

v.

JOHN W. GILBERT ASSOCS., INC., Third Party Defendants.

Civ. A. No. 88–0482P.

United States District Court, D. Rhode Island.

April 11, 1991.

John T. Walsh, Jr., Providence, R.I., for plaintiffs.

Howard E. Walker, Hinckley, Allen, Snyder & Comen, Providence, R.I., for Peterson Builders.

Irving A. Pianin, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., Suzanne G. Curt, Asst. U.S. Atty., Providence, R.I., for U.S.

Berndt W. Anderson, Roberts, Carroll, Feldstein & Peirce, Providence, R.I., Louis Saccoccio, Mary Kennard, Gen. Counsel, University of Rhode Island, Kingston, R.I., for Board of Governors.

Barbara S. Cohen, Goldenberg & Muri, Providence, R.I., Augustus F. Wagner, Jr., Nutter, McClennen & Fish, Hyannis, Mass., Leonard W. Langer, Marshall J. Tinkle, Thompson, McNaboe, Ashley & Bull, Portland, Me., for John W. Gilbert Associates, Inc.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The above-captioned case has been extensively litigated over the past several years. For clarity's sake, I will repeat the basic premises of this action. Alison Rollins, the daughter of Philip and Priscilla Rollins, died after being electrocuted while working on board the research vessel "Endeavor." The United States owned, the Board of Governors for Higher Education leased, Peterson Builders built, and John W. Gilbert Associates designed the ship. Alison's parents sued the Board under the Jones Act, 46 U.S.C. § 688 (1982) for negligence and unseaworthiness under general maritime law; the United States under the general maritime law for the unseaworthiness of the "Endeavor" and under the Public Vessels Act, 46 U.S.C. §§ 781–90 (1982) and Suits in Admiralty Act, 46 U.S.C. § 741–52 (1982); and Peterson under diversity and the general maritime law for unseaworthiness and products liability. The Board and the United States filed a third party complaint against Gilbert for contribution and indemnity.

During the course of litigation, this Court has issued several major opinions on motions in limine and for summary judgment. In an opinion issued on May 2, 1990, 761 F.Supp. 918, this court held that Rollins could receive compensation for the loss of Alison's society, Alison's estate, however, could not recover damages for Alison's lost future wages, Mrs. Rollins could not maintain an action for negligent infliction of emotional harm, and the United States and the Governing Board could not receive in-

demnity and contribution from Gilbert for punitive damages. On October 17, 1990, 761 F.Supp. 930, this Court denied the Board of Governors motion for summary judgment on the basis of sovereign immunity and on March 27, 1991, 761 F.Supp. 933, set down for hearing the Board's motion for summary judgment with regard to the exclusivity clause of the Public Vessels Act and the Suits in Admiralty Act. Prior to that, on January 10, 1991, upon a motion for reconsideration, this Court struck the Rollins' loss of society claim on the basis of *Miles v. Apex Marine Corporation,* —— U.S. ——, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), decided on November 6, 1990.

The defendants Board of Governors and the United States now bring another motion in limine on the basis of the *Apex* decision. They move that this Court strike plaintiff's punitive damages claim; not because the Supreme Court specifically discussed the issue but because "the import of the Court's decision is that such damages are not recoverable" in the instant case.

The defendants' argument, based on the language, not the holding of *Apex,* is two-pronged. First, they contend that punitive damages are non-pecuniary in nature and are, therefore, not available under the Jones Act. Second, they contend that if such damages are not available under the Jones Act, then, in keeping with the desire to create uniformity in maritime law, punitive damages should not be available under general maritime law. For the reasons discussed below, defendants motion is granted.

A. *Miles v. Apex Marine Corporation*

In *Apex,* the Supreme Court considered "the scope of damages under general maritime law." *Id.* 111 S.Ct. at 320. The issues presented were whether a non-dependent parent could recover for loss of society pursuant to a wrongful death claim under general maritime law and whether general maritime law permits a survival action for lost future wages. *Id.* The Court held "that there is a general maritime cause of action for the wrongful death of a seaman, but that damages recoverable in such an action do not include loss of society. [The Court further held] that a general maritime survival action cannot include recovery for decedent's lost future earnings." *Id.* at 328.

In reaching these conclusions, the Court discussed the maritime common law and statutory history of negligence and wrongful death actions for seamen which culminated in the case of *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In *Moragne,* the central issue was whether the statutory limits on recovery in the Jones Act and the Death on the High Seas Act ("DOHSA"), 41 Stat. 537, 46 U.S.C. § 761 *et seq.,* proscribed a more general maritime cause of action. *Id.* 111 S.Ct. at 321. "The [*Moragne*] Court found no such proscription." *Id.* at 322.

Prior to *Moragne,* there were certain anomalies in maritime law caused primarily by the fact that the Supreme Court had "transformed the warranty of seaworthiness into a strict liability obligation."[1] *Id.*

First, in territorial water, general maritime law allowed a remedy for unseaworthiness resulting in injury, but not for death. Second, DOHSA allowed a remedy for death resulting from unseaworthiness on the high seas, but general maritime law did not allow such recovery for a similar death in territorial waters. Finally, in what *Moragne* called the 'strangest' anomaly, in those States whose statutes allowed a claim for wrongful death resulting from unseaworthiness, recovery was available for the death of a longshoreman due to unseaworthiness, but not for the death of a Jones Act seaman. (citations omitted). This was because wrongful death actions under the Jones Act are limited to negligence, and the Jones Act pre-empts state

---

1. In 1944, 24 years after the enactment of the Jones Act and DOHSA, the Supreme Court, in *Mahnich v. Southern S.S. Co.,* 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944), "transformed the warranty of seaworthiness into a strict liability obligation." *Apex,* 111 S.Ct. at 322.

law remedies for the death or injury of a seaman. *Id.* (citations omitted). "[T]o remedy [these] nonuniformities that could not have been anticipated when [the] statutes were passed....[t]he Court ... created a general maritime wrongful death cause of action." *Id.* "This result was not only consistent with the general policy of both 1920 Acts [2] favoring wrongful death recovery, but also effectuated 'the constitutionally based principle that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.'" *Id.* at 322–23.

The *Apex* Court used its discussion of *Moragne* as the groundwork for its conclusions. The Court noted that *Moragne* indicates that a court in admiralty "may supplement ... statutory remedies where doing so would achieve the uniform vindication of such policies consistent with [the] constitutional mandate, but [courts] must also keep strictly within the limits imposed by Congress." *Apex*, 111 S.Ct. at 323. With regard to these limits, the Court held that "[t]he Jones Act evinces no general hostility to recovery under maritime law [and that] [i]t does not disturb seamen's general maritime claims for injuries resulting from unseaworthiness." [3] *Id.* at 324.

As to the type of remedies available under the Jones Act, the Court stated that the Act incorporates the recovery provisions of the Federal Employees Liability Act ("FELA") and that under FELA recovery is only available for pecuniary loss. *Id.* at 325. "Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well." *Id.* The Court stated, therefore, that "[t]here is no recovery for loss of society in a Jones Act wrongful death action." *Id.* From this, the Court concluded that a loss of society action was also precluded in an action under general maritime law because "it would be inconsistent ... to sanction more expansive remedies in a judicially-created cause of action

in which liability is without fault than Congress has allowed in cases of death resulting from negligence [pursuant to the Jones Act]." *Id.* at 325–26. The Court stated that with this decision it was "restor[ing] a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Id.* at 326.

With regard to survival actions, the Court noted that the "Jones Act incorporates FELA's survival provision, but, as in most States, recovery is limited to losses suffered during the decedent's lifetime." *Id.* at 327. The Court, refused to adopt a "distinctly minority view," *id.*, when it was obliged to balance the "special solitude [that admiralty courts] have always shown for the welfare of seamen and their families," *id.*, against the fact that "[m]aritime tort law is now dominated by federal statute." *Id.* The Court held that the defendant's estate could not recover for lost future income under the Jones Act and, therefore, could not do so under general maritime law. *Id.* at 328.

## B. *Discussion*

### 1. *Introduction*

In *Karvelis v. Constellation Lines*, 806 F.2d 49 (2d Cir.1986), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987), the court remarked that the arguments regarding seamen's claims "plunge us into the Serbonian Bog, that is the law relating to a seaman's recovery for death and injury. We use this term advisedly, for the leading commentators refer in their treatise to the fact that '[t]he perils of the sea, which mariners suffer and shipowners insure against, have met their match in the perils of judicial review.'" *Id.* at 51. The Second Circuit Court of Appeals also noted that the title of another commentator's article, "The Devil's Own Mess," 1960 Sup. Ct.Rev. 158, emphasizes the point. *Id.* This Court wholeheartedly agrees with the

---

**2.** The 1920 Acts were the Jones Act and DOHSA.

**3.** As I will discuss, *infra*, the Court also noted that "the Jones Act establishes a uniform system of seamen's tort law parallel to that available to

employees of interstate railway carriers under FELA (Federal Employees Liability Act, 35 Stat. 65, as amended, 45 U.S.C. §§ 51–59)." *Apex*, 111 S.Ct. at 324.

Second Circuit's characterization of the law on this topic.

In *Apex*, the Supreme Court focused on creating consistency in maritime actions for death and injury. To evaluate whether the quest for consistency would be hampered by awarding punitive damages, it is necessary to review the various remedies available.

In the 1920's, Congress passed the Death on the High Seas Act ("DOHSA") and thereby created a statutory action for wrongful death occurring on the "high seas" based on negligence or unseaworthiness. *See Apex*, 111 S.Ct. at 322–23. For deaths or injury within coastal waters, state causes of action accrued. *See id.* If the state in whose coastal waters the death occurred had a wrongful death statute, then a wrongful death action would be allowed. *See id.*

" 'The revolution in the law began with *Mahnich v. Southern S.S. Co.*, [321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944) ],' in which [the Supreme Court] transformed the warranty of seaworthiness into a strict liability obligation." *Id.* 111 S.Ct. at 322. Up until that time, negligence was the main vehicle for wrongful death actions and since most states had wrongful death actions for negligence, there was no inconsistency between DOHSA claims for those who died on the high seas and state claims for those who died within coastal waters. Once the owner or person in control of the vessel "became liable for failure to supply a safe ship irrespective of fault," *id.* at 322, unseaworthiness, rather than negligence, became the basis for many wrongful death actions. *Id.* This created an inconsistency which "could not have been foreseen by Congress." *Id.* Those who died on the high seas had an action for unseaworthiness, but those who died in coastal waters did not because most states did not have wrongful death actions based on unseaworthiness.

Pursuant to the Jones Act, which was also passed in 1920, true seaman were given a statutory survival action for negligence and a wrongful death action for negligence against their employers. The Jones Act created the wrongful death action by the incorporation of the Federal Employers' Liability Act ("FELA"), 35 Stat. 65, as amended, 45 U.S.C. §§ 51–59. The Jones Act preempted state law remedies for death or injury. *Id.* at 322. As a result, Jones Act seamen had no remedy for wrongful death for unseaworthiness even if one existed at state law.

With *Moragne*, the Supreme Court "eliminate[d] these inconsistencies and render[ed] maritime wrongful death law uniform by creating a general maritime wrongful death action applicable in all waters." *Id.* This filled the gap. Now, if there was no wrongful death action available for unseaworthiness because of an anomaly in state law or because of Jones Act preemption, it was still possible to bring a federal *Moragne* action. "This result was not only consistent with the general policy of both 1920 Acts favoring wrongful death recovery, but also effectuated 'the constitutionally based principle that federal admiralty law should be "a system of law coextensive with, and operating uniformly in, the whole country." ' " *Id.* 111 S.Ct. at 322–32 (citations omitted).

### 2. *Statutory Remedies and Punitive Damages*

In *DoCarmo v. F.V. Pilgrim I Corp.*, 612 F.2d 11 (1st Cir.1979), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980), the First Circuit Court of Appeals stated that "courts have … consistently confined Jones Act damage award to pecuniary loss[,]" noting that "arguments concerning any injustice alleged to be perpetrated by this rule should properly be addressed to Congress." *Id.* at 13, 13 n. 3. The Ninth Circuit Court of Appeals in *Kopczynski v. The Jacqueline*, 742 F.2d 555, 560–61 (9th Cir.1984) specifically noted that pursuant to FELA, Jones Act damages are limited to pecuniary damages and that "[p]unitive damages are nonpecuniary." *Id.* at 561. In *Michigan Central R. Co. v. Vreeland*, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913), the Supreme Court defined pecuniary loss or damage pursuant to FELA:

It is a term employed judicially, 'not only to express the character of that loss to

the beneficial plaintiff which is the foundation of their right of recovery, but also to discriminate between a material loss which is susceptible of a pecuniary valuation, and that inestimable loss of society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation. *Id.* 33 S.Ct. at 196.

In *Apex*, the Court stated that "[w]hen Congress passed the Jones Act, the *Vreeland* gloss on FELA, and the hoary tradition behind it, were well established. Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well." 111 S.Ct. at 325. The Court stated, therefore, that the Jones Act only provides recovery for pecuniary loss. *See id.*

■ The key word in all of these cases is "loss." Although it can be argued that "the unique purpose of punitive damages differentiates them" from non-pecuniary losses, *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1348 (9th Cir.1987), this Court is not convinced that such argument can prevail in light of the Supreme Court's interpretations of both FELA and the Jones Act. Punitive damages "are given to the plaintiff over and above the full compensation for his injuries, for the purpose of punishing the defendant, of teaching him not to do it again, and of deterring others from following his example." Prosser, Law of Torts, § 2 at p. 9 (4th ed.). Punitive damages are not defined as compensation for a "loss." Thus, whether punitive damages are strictly defined as "pecuniary," a loss capable of measurement, *see Vreeland*, 33 S.Ct. at 196, does not matter. The fact is that punitive damages do not provide compensation for a "loss" and both FELA and the Jones Act have been interpreted as limiting recovery to pecuniary *loss*. This Court, therefore, holds that punitive damages are not available under the Jones Act.

It is important to note for further discussion, that pursuant to DOHSA, Congress "has limited survivors to recovery of their pecuniary losses." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 623, 98 S.Ct. 2010, 2014, 56 L.Ed.2d 581 (1978).

Where DOHSA applies, its pecuniary remedies cannot be supplemented by non-pecuniary damages available under the general maritime law. *Higginbotham*, 436 U.S. at 624–25 [98 S.Ct. at 2014–15] (barring damages for loss of society under the general maritime law). Nor can DOHSA be supplemented by non-pecuniary damages available under state law. *Offshore Logistics, Inc. v. Tallentire* [477 U.S. 207], 106 S.Ct. 2485, 2498 [91 L.Ed.2d 174] (1986) (barring damages for loss of society under state law).

\* \* \* \* \* \*

'Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of non-pecuniary supplements.' *Higginbotham*, 436 U.S. at 625 [98 S.Ct. at 2015]. The pecuniary remedies available under DOHSA therefore cannot be supplemented by punitive damages under the general maritime law. *Bergen*, 816 F.2d at 1348–49.

In sum, punitive damages are not recoverable pursuant to the Jones Act nor are such recoverable under DOHSA. Finally, DOHSA precludes recovery for wrongful death under general maritime law and, thereby, precludes recovery of punitive damages under such theory.

### 3. The Jones Act and General Maritime Recovery for Wrongful Death

The *Apex* Court clearly concluded that the Jones Act does not preclude recovery for wrongful death based on unseaworthiness under general maritime law. "The Jones Act evinces no general hostility to recovery under maritime law. It does not disturb seamen's general maritime claims for injuries resulting unseaworthiness ... and it does not preclude the recovery for wrongful death due to unseaworthiness created by its companion statute DOHSA. \* \* \* If there has been any doubt about the matter, we today make explicit that there is a general maritime cause of action for the wrongful death of a seaman...." *Apex*, 111 S.Ct. at 324. The question presented by the instant case, however, is whether punitive damages for wrongful

death are precluded when joined with a Jones Act claim.[4]

Although the *Apex* Court did not directly address the question of punitive damages in such a situation, it did clearly state that by excluding non-pecuniary damages under general maritime law it was "restor[ing] a uniform rule applicable to all actions for wrongful death of a seaman whether under DOHSA, the Jones Act or general maritime law." 111 S.Ct. at 326. The *Apex* Court emphasized the importance of uniformity by using *Moragne* as the groundwork for its decision in *Apex*. *Apex*, 111 S.Ct. at 323.

> We have described *Moragne* at length because it exemplifies the fundamental principles that guide our decision in this case. We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress. *Id.*

 If this Court were to allow punitive damages for wrongful death pursuant to general maritime law, we would be *creating* an inconsistency. DOHSA clearly does not allow punitive damages for wrongful death, *see supra*, on either a theory of negligence of unseaworthiness. A DOHSA plaintiff, one whose decedent died "on the high seas" is precluded from a remedy under general maritime law. A Jones Act seaman, however, is not precluded from such a general maritime recovery because unlike DOHSA, the Jones Act only provides remedies for negligence, not unseaworthiness. If Jones Act seamen could get recovery for wrongful death within coastal waters that included punitive damages, they would be allowed a remedy that is unavailable to others who die "on the high seas." Such an anomaly would fly in the face of the *Apex* Court's admonition that

---

4. In a dissent from a denial of certiorari, Justice White, in 1989 noted that there is a conflict in the circuits with regard to this question. "The Ninth Circuit held that where a Death on the High Seas Act claim[,] is joined with a Jones Act claim, neither statutory scheme may be supplemented by an award of punitive damages under general maritime law. This holding is contrary to the Fifth Circuit's decision in *In re Merry Shipping, Inc.*, that punitive damages are available under general maritime law even when such a claim is joined with a Jones Act claim." *McMonagle v. Northeast Women's Center, Inc.*, — U.S. —, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989) (White, J., dissenting) (citations omitted).

The *In re Merry Shipping* court held "that punitive damages may be recovered in a seaman's action brought under either general maritime law or the Jones Act or both" and that such damages "may be recovered ... upon a showing of willful and wanton misconduct by the shipowner in the creation or maintenance of unseaworthy conditions." 650 F.2d 622, 623 (5th Cir. 1981). The problem with this case is twofold. First, it was decided prior to *Apex* and second, one of the court's main arguments for punitive damages is based on what is now no longer the law according to *Apex*. The *Merry Shipping* court stated that "the survivors may sue for both their pecuniary losses, including loss of services and support, and their nonpecuniary losses, in particular "loss of society." *Id.* This was based on the Supreme Court's decision in *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 591, 94 S.Ct. 806, 818, 39 L.Ed.2d 9 (1974). In *Apex*, however, the Court strictly limited *Gaudet* to cases where a longshoreman is injured in coastal waters. *Apex*, 111 S.Ct. at 324–25. The Court clearly held that nonpecuniary losses such as loss of society are not recoverable in an action for the wrongful death of a seaman. *Id.* at 328. Some of the groundword for the *Merry Shipping* decision has, therefore, eroded.

The plaintiffs point out that the First Circuit Court of Appeals has allowed for the recovery of punitive damages pursuant to general maritime law citing to *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048 (1st Cir.1973) and *Muratore v. M/S Scotia Prince*, 845 F.2d 347 (1st Cir.1988). Although these cases do indicate that punitive damages are available under general maritime law and that such has been the case since the Supreme Court decided *The Amiable Nancy*, 16 U.S. (3 Wheat.) 546, 4 L.Ed. 456 (1818), in 1818, these cases do not address the preclusive effect of the Jones Act or DOHSA because the cases did not deal with wrongful death claims. *Robinson* deals primarily with the question of punitive damages as it relates to a seaman's right to maintenance and cure. 477 F.2d at 1051. *Muratore* deals with a passenger's action for intentional infliction of emotional distress through the harassment of the ship's photographer. 845 F.2d at 354.

remedies may only be supplemented where the application will be uniform. *Apex,* 111 S.Ct. at 323.

This Court recognizes that we are not bound when the Supreme Court does not discuss a matter. *See Cousins v. Secretary of the U.S. Dep't of Transportation,* 880 F.2d 603, 608 (1st Cir.1989). In the instant case, however, this Court is of the opinion that the *Apex* case as well as the earlier *Moragne* case indicate that the Supreme Court has set its sails toward creating uniformity in maritime law. To disturb such, without Congressional approval, is beyond the scope of this Court's authority. We must agree with the First Circuit Court of Appeals that "arguments concerning any injustice ... should properly be addressed to Congress." *DoCarmo,* 612 F.2d at 13, n. 3. I, therefore, hold that the plaintiffs' claim for punitive damages for wrongful death under general maritime law must be stricken.

### 4. *Survival Claim under the Jones Act*

In analyzing the instant case, we must keep in mind that "a wrongful death action and a survival action are two distinct types of claims. In simplest terms, the wrongful death action is to recover damages to beneficiaries resulting from the decedent's death, the survival action to recover damages the decedent could have recovered but for his death." *Azzopardi v. Ocean Drilling & Exploration Co,* 742 F.2d 890, 893 (5th Cir.1984) (citing *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 575 n. 2, 94 S.Ct. 806, 810 n. 2, 39 L.Ed.2d 9 (1974); *Vreeland,* 227 U.S. at 67–68, 33 S.Ct. at 194–95; W. Prosser, Handbook of the Law of Torts 898–901). The Supreme Court " 'has repeatedly taken pains to point out that liability based on unseaworthiness is wholly distinct from liability based on neg-

ligence.' " *Karvelis v. Constellation Lines,* 806 F.2d at 52 (citations omitted).

■ The Jones Act specifically allows for the survival of negligence claims for injuries suffered prior to death. *Apex,* 111 S.Ct. at 326. A number of circuit courts of appeals, including the First Circuit Court, have relied on *Moragne* to hold that there is a general maritime right of survival for unseaworthiness claims. *Id.; see Barbe v. Drummond,* 507 F.2d 794, 799–800 (1st Cir.1974).[5] In *Apex,* the Court held that "[t]he Jones Act/FELA survival provision limits recovery to losses suffered during the decedent's lifetime." 111 S.Ct. at 328. Because punitive damages are not *losses,* they are not recoverable under the Jones Act nor are they recoverable under general maritime law pursuant to the allowed survival action. *See id.* In the instant case, this means that although the plaintiffs have survival claims sounding in negligence and unseaworthiness, their claim for punitive damages under these theories is not viable. Punitive damages, like the lost future earnings disallowed in *Apex,* are not *losses* suffered during the decedent's lifetime.

### 5. *Punitive Damages and the United States*

■ In my opinion of May 2, 1990, I reserved judgement on some of the punitive damages issues until the parties provided full briefs on the subject.[6] The parties still have not briefed the availability of punitive damages against the United States. The United States, however, is in this suit because it has waived sovereign immunity under the Public Vessels Act and the Suits in Admiralty Act. "Punitive damages could not be recovered under these statutes since the only remedy given is

---

**5.** There may be some confusion with regard to whether the plaintiffs have a viable claim for unseaworthiness against their decedent's employer, the Board of Governors. In *Moragne* ... the Supreme Court noted in dicta that traditionally a seaman's right under general maritime law to sue his employer for injuries caused by unseaworthiness existed alongside his Jones Act rights. *Smith v. Ithaca Corp.,* 612 F.2d 215, 225 (5th Cir.1989). I wanted to take to this opportunity to thus clarify that the Board of Governors as the decedent's employer and as a

bareboat charterer may be liable for negligence under the Jones Act *and* for unseaworthiness under general maritime law. *See Reed v. Yaka,* 373 U.S. 410, 412–13, 83 S.Ct. 1349, 1351–52, 10 L.Ed.2d 448 (1963).

**6.** In my opinion of May 2, 1990, I noted that "punitive damages can be awarded under the general maritime law for actions that are 'intentional, deliberate or so wanton and reckless as to demonstrate a conscious disregard of the rights of others.' " Now, however, I feel con-

against the United States. The United States is immune from suit unless Congress removes such immunity, and the statutes which waive immunity are to be strictly construed in favor of the sovereign." Note, *Punitive Damages in Admiralty*, 18 Hastings Law Rev. 995, 1007 (1967). I, therefore, conclude that punitive damages are not available against the United States in the instant action.

### C. *Conclusion*

In sum, this Court grants the defendants', the Board of Governors and the United States, motion to strike to punitive damages. I hold that as a matter of law punitive damages cannot be recovered under the Jones Act and that based on the Supreme Court's reasoning in the recent *Apex* decision as it supplements the Court's earlier *Moragne* decision, punitive damages cannot be recovered under general maritime law for either a wrongful death or based on a survival action. Since the 1920's, Congress and the Supreme Court have attempted to eliminate inconsistencies. This Court cannot now create a new anomaly.

strained to following the reasoning of the recent *Apex* case.