762 So.2d 552 (2000)
KLOSTER CRUISE LIMITED d/b/a Norwegian Cruise Line, Appellant/Cross-Appellee,
v.
Karen GRUBBS and Harold Grubbs, Appellees/Cross-Appellants.
Nos. 3D98-1802, 3D98-2026.
District Court of Appeal of Florida, Third District.
June 28, 2000.
*554 Mase & Gassenheimer and Beverly D. Eisenstadt and James D. Gassenheimer, Miami, for appellant/cross-appellee.
DeMahy Labrador & Drake and Kenneth R. Drake, Miami, for appellees/cross-appellants.
Before JORGENSON, FLETCHER, and SHEVIN,[*] JJ.
PER CURIAM.
Kloster Cruise Limited, doing business as Norwegian Cruise Line, appeals from a jury verdict for Karen Grubbs in her action for damages from a slip and fall aboard one of Norwegian's Alaskan cruise ships. We reverse.
In 1994, Grubbs and her husband were passengers on a cruise ship touring Alaska. After a day in Juneau, the Grubbs were on the top deck of the ship to watch the departure from that port. When Karen entered the doorway to the interior of the ship she slipped on the metal threshold and fell, breaking her hip.
The Grubbs filed this action alleging that Norwegian was negligent. The matter went to trial before a jury and resulted in a verdict for Karen Grubbs. Norwegian appeals arguing that the trial court made a series of rulings which resulted in the denial of a fair trial for Norwegian. We reverse based on two of the complained-of rulings.
Prior to trial Norwegian had not listed any expert witnesses as to the safety of the ship. During trial Norwegian attempted to question its corporate representative, Captain Langset, about numerous safety inspections which are performed on the ship. Norwegian also wished to elicit the Captain's testimony that the thresholds met the relevant safety standards. The Grubbs objected that there had not been proper disclosure that the Captain would be offered to give such testimony and thus no opportunity to procure opposing expert testimony. The trial court agreed and excluded that testimony. The court's ruling on this issue was within its discretion.
However, during cross examination, the Grubbs' counsel asked the captain questions intended to convey the idea that Norwegian was indifferent to passenger safety:
"Q. And is it your testimony to this jury that you wait till somebody reports an injury to the medical department before you're aware of any danger?
A. No, that's not my testimony.
Q. Let me rephrase the question. One of the methods that your shipping industry uses is to wait till there is a report of an injury before you do something about what caused the injury; is that correct?
A. No, that is what you're saying. I'm not saying that."
When Norwegian requested an opportunity to rebut that misleading conjecture, the trial court denied the request. In our view, after counsel for the Grubbs implied that the shipping industry does nothing to prevent injury, Norwegian should have been permitted to adduce testimony as to the safety standards complied with and the multiple safety certifications that the ship held.
In addition, during closing argument the Grubbs' counsel argued that the jury should "tell them [Norwegian] by your verdict in this case to do something about this ... Tell them by the verdict that it is significant. They need to anticipate... they need to anticipate accidents *555 before they happen. They need to have some test areas that people might use or they might walk on." Norwegian twice objected to this argument and further moved for mistrial on the same basis, but its objections were overruled and its motion denied. In our view that was error as such "send a message" arguments are clearly improper. Murphy v. Murphy, 622 So.2d 99, 102 (Fla. 2d DCA 1993); Maercks v. Birchansky, 549 So.2d 199 (Fla. 3d DCA 1989). Further undermining the propriety of his closing was the Grubbs' counsel's later argument that Norwegian did nothing about safety and his criticism of Norwegian for failing to produce safety certifications, even though testimony as to safety inspections and the certifications was excluded due to his own objection.
Also troubling, in the context of determining the fairness of the trial for Norwegian, was the statement volunteered by the Grubbs' expert which could have been interpreted as referring to subsequent remedial measures. On that issue we note that the statement was not elicited by the Grubbs and a curative instruction was given. Nevertheless, based on all of the foregoing, we conclude that Norwegian did not have a fair trial and that this matter must be remanded for a new trial.
Because the matter will be re-tried, we address some of the other issues raised by Norwegian in this appeal. On the question of the admissibility of statements allegedly made by the ship's doctor relating to preventive measures attempted by Norwegian, we conclude that the matter is not properly preserved for review because the bare hearsay objection made below did not elucidate the double hearsay/scope of employment argument Norwegian now offers as a basis to exclude the evidence. Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982); Centex-Rooney Constr. Co., Inc. v. Martin County, 706 So.2d 20, 27 (Fla. 4th DCA 1997).
As to the jury instructions, there are several issues which need to be addressed. Norwegian argues that it was entitled to an instruction on the open and obvious nature of the doorway. We think the instruction was properly denied because while it is true as a general proposition that a property owner has no duty to warn of such dangers, there are important limitations on the rule, two of which apply here. First, it is the dangerous condition of an object which must be open and obvious, not simply the object itself. Under these circumstances it is not enough to say that the metal drain and threshold could be easily observed because Karen's claim is that the threshold is slippery, especially when wet, and that the threshold should have been made of non-skid material. The slippery nature of the threshold was not apparent and there was no basis on these facts to say that the slippery nature was open and obvious.
Second, a property owner is not absolved of responsibility where the owner has reason to believe that others will encounter the dangerous condition regardless of the open and obvious nature of the condition. Pittman v. Volusia County, 380 So.2d 1192 (Fla. 5th DCA 1980). The dangerous object at issue in this case is a threshold leading into the ship which is designed for passengers to pass through. The length of the metal threshold and drain are roughly equal to the length of an ordinary shoe. Clearly Norwegian must have anticipated that some passengers would step over the threshold and other passengers would, with some frequency, step onto the threshold or drain cover. Thus, on the facts here the requested instruction on open and obvious condition was inapplicable. Or, stated differently, the instruction would have been incomplete or misleading to the jury.
The more difficult question is the instruction directed to the question of Norwegian's duty of care. At the charge conference, Norwegian repeatedly requested a set of instructions, which together stated *556 that Norwegian's duty was to "exercise reasonable care under the circumstances which requires as a prerequisite to imposing liability, notice on the part of the cruise line." [Tr. 487] Norwegian repeatedly argued that applicable maritime law requires that "there must be notice of a risk creating condition, notice o[r] constructive notice and the condition must be one that is not open and obvious."
The instruction actually given was that the jury was to determine "whether [Norwegian] negligently failed to maintain their premises in a reasonably safe condition or negligently failed to correct a dangerous condition of which [Norwegian] either knew or should have known by the use of reasonable care...." On appeal Norwegian argues that the first half of the instruction allowed the jury to find liability without notice. Applicable case law appears to indicate that a prerequisite to imposing liability on a carrier such as Norwegian is that "the carrier have had actual or constructive notice of the risk-creating condition, at least where ... the menace is one commonly encountered on land and not clearly linked to nautical adventure." Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir.1989) [e.s.]. It is not at all clear from this record that the danger at issue here is one "commonly encountered on land," and, thus, we cannot say that the trial court clearly erred in giving the instruction it did.
However, we do agree with Norwegian that "the extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more dangers to a passenger, will determine how high a degree of care is reasonable in each case." Keefe, 867 F.2d 1318 at 1322 (quoting Rainey v. Paquet Cruises, Inc., 709 F.2d 169, 172 (2d Cir.1983)). Thus, upon retrial, the parties may request jury instructions which appropriately reflect the degree to which the danger at issue here is unique to maritime travel and whether Norwegian's conduct involved an appropriate degree of care in light of those matters.
Finally, the record shows that Karen was awarded damages for a future hip replacement and Norwegian argues this award was improper. Since this matter will arise again on retrial, we note that it is a plaintiffs burden to show that future medical expenses will more probably than not be incurred. That burden may only be met with competent substantial evidence. White v. Westlund, 624 So.2d 1148, 1150 (Fla. 4th DCA 1993). A fair reading of the evidence offered below was that a future hip replacement would be needed if Karen developed avascular necrosis and that one x-ray contained a suspicious spot which might or might not indicate the future development of avascular necrosis. However, the physician who took the x-ray was clear that he had not made such a diagnosis and that he thought the likelihood of its developing and the need for a future hip replacement was remote. Another treating physician stated that if in the future Karen began to experience pain over the present level of discomfort it could be a symptom of avascular necrosis and should be investigated. From this, the Grubbs' counsel argued that there was sound evidence that Karen was experiencing additional discomfort and that it therefore followed, in his opinion, that Karen was developing avascular necrosis even though no doctor had diagnosed that condition.
The foregoing was legally insufficient to support the jury award for future medical expenses for a hip replacement. At the time of retrial, the Grubbs may, of course, make whatever claims are appropriate based on Karen's condition at the time and they are not precluded from reiterating this claim if there is competent medical testimony that in the future it is more likely than not that a hip replacement will be needed. Id.
Our rulings above render the appeal on the taxing of costs moot, so we do *557 not address those issues. On the cross appeal, it is our view that the Grubbs' claim for pre-judgment interest must be submitted to the jury unless there is a stipulation to have the issue decided by the court, Robinson v. Pocahontas, Inc., 477 F.2d 1048, 1052-53 (1st Cir.1973); Rollins v. Peterson Builders, Inc. 761 F.Supp. 943 (D.R.I.1991); Petersen v. Chesapeake & Ohio Ry. Co., 784 F.2d 732, 740 (6th Cir. 1986), and the parties should proceed accordingly at retrial.
Reversed and remanded.
NOTES
[*] Judge Shevin did not hear oral argument, but participated in the decision.