DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY,** as successor by merger to
**LORILLARD TOBACCO COMPANY,**
Appellant,

v.

**KATHLEEN GAFNEY,** as Personal Representative of the **ESTATE of
FRANK EUGENE GAFNEY,**
Appellee.

No. 4D13-4358

[March 23, 2016]

Appeal and cross-appeal from the Circuit Court for the Fifteenth
Judicial Circuit, Palm Beach County; Peter D. Blanc, Judge; L.T. Case No.
502007CA020540XX.

Chad A. Peterson, W. Randall Bassett and William L. Durham II of King
& Spalding LLP, Atlanta, GA; Jeffrey S. Bucholtz of King & Spalding LLP,
Washington, D.C., for appellant/cross-appellee.

David J. Sales of David J. Sales, P.A., Jupiter; James W. Gustafson,
Jr., and Darryl L. Lewis of Searcy Denney Scarola Barnhart & Shipley,
P.A., Tallahassee, for appellee/cross-appellant.

KLINGENSMITH, J.

R.J. Reynolds Tobacco Company and Lorillard Tobacco Company
("appellants")[1] appeal from an adverse jury verdict in favor of Kathleen
Gafney, as Personal Representative of the Estate of Frank Eugene Gafney
("appellee"). The jury found that the decedent's death was the result of
diseases and medical conditions caused by addiction to cigarettes
manufactured and distributed by appellants. We reverse due to improper
comments made to the jury during appellee's counsel's closing argument.
Specifically, statements requesting the jury to send a message through a
compensatory damage award, and insinuating that appellants' attorneys
were involved in a conspiracy to conceal the addictive nature of smoking.

---

[1] Post-trial, R.J. Reynolds was substituted in place of Lorillard when the two
companies merged, and Lorillard ceased to exist as a result of the merger.

Because we reverse this case for a new trial, we decline to address the issues raised in appellee's cross-appeal.

During closing argument, different attorneys handled various aspects of the issues to be presented. On the issue of compensatory damages, one of appellee's attorneys began his remarks by stating:

> Now, for the next few minutes, I want to discuss with you what I humbly believe is probably the most important part of the case. And in your verdict – "verdict" means to speak the truth. *Your verdict must speak loud and it must speak clear.* And the truth your compensation verdict must speak is the amount of money it will take to compensate and equalize, balance the harm that has been done in this case.

Shortly thereafter, appellee's counsel continued with the same theme:

> Now, what I like to refer to this is, members of the Jury, it's your call to action. *When you see that compensation part of this verdict, it's your call to action.*
>
> And the question was asked by Mr. Gustafson, what are you going to do about it? What are you going to do about it? *This is your call to action.*
>
> . . . .
>
> Now, the truth your verdict must speak, it must make these cigarette companies meet its full responsibility also. . . .
>
> . . . .
>
> And, members of the jury, for her to begin the healing process, they got to give full account. They got to give full account.

Although the defense's objection to these comments was overruled, another objection was later sustained when counsel followed up with this argument on the compensatory damage award:

> It's not $11 million, it's not $9 million. The right figure in this case for this loss is $10 million.
>
> And I say that very clearly and very humbly, understanding what your role is as jurors, but there has been enough

2

devaluing of the full worth of human companionship and of human worth and all the agony caused and contributed to by all that these companies did, members of the Jury. There has been enough of that. *And I say to you enough is enough. And your verdict should speak loud and it should speak clear.*

Later in the closing argument, while discussing the verdict form and the question of whether the decedent was addicted to cigarettes containing nicotine, another of appellee's attorneys remarked:

And this is an addiction case. It's not a choice case. The word "choice" isn't in those jury instructions and it may be – the word "choice" isn't in those jury instructions. The word "control" isn't in those jury instructions. What's in those jury instructions are things about what addiction does and doesn't do, and whether or not it makes a difference in the 20th Century, in the life of somebody like Frank Gafney.

And, you know, it's important for other reasons, not just to understand an answer to that first question on the verdict form, but it's important also because it sets up, if you will, the real dispute of the case, and if you wanted to have a window when the defendants, through the Tobacco Institute, were speaking privately, secretly among themselves, high-ranking officials of the Tobacco Institute, *and want to know why the defense in these cases consistently tries to recast the jury instructions and the questions on the verdict form, you have information that helps you from one of their co-conspirators*, and that's the Tobacco Institute, and here it is.

Appellants' counsel immediately objected and moved for a mistrial, arguing that appellee's counsel was attempting to link the defense attorneys to a scheme to conceal the truth about the harmful effects of smoking, which amounted to an attack on appellants' conduct of their defense in the suit. The court reserved on the motion for mistrial, but indicated that whether intentional or not, counsel's remark sounded like an improper reference to the defendants' attorneys being involved in a conspiracy. In response, appellee's counsel tried to explain his remarks:

I am seeking to draw a legitimate comparison between an admission of a co-conspirator as to what the issue is when someone is asked a question as to whether or not it's addiction or choice, and the arguments that were made here, I'm asking the jury to contrast evidence, matters in evidence with the

positions taken by the parties. I will not suggest that [appellants' attorneys are] co-conspirator[s] or that they are actively seeking to perpetuate any fraud on the public. That's not part of my argument.

After the trial judge informed appellee's counsel that comment on the evidence was fair while comment on the attorneys was not, appellee's counsel continued with his closing argument by stating to the jury that he "want[ed] to make it completely clear that it is not the position of [appellant or her attorneys] that these lawyers are participants in any conspiracy. There's no suggestion offered that way whatsoever."

At the conclusion of the case, the jury found that the decedent was addicted to cigarettes containing nicotine, which was a legal cause of his lung cancer and death, and that smoking cigarettes manufactured by appellants was a legal cause of decedent's lung cancer and death. The jury awarded $5.8 million in compensatory damages for appellee's loss of companionship and protection, and for her pain and suffering, apportioning 33% of the fault to appellant R.J. Reynolds, 33% of the fault to appellant Lorillard, and 34% of the fault to the decedent. The trial court denied all of appellants' post-verdict motions. This appeal followed.

I.    "Send a Message" Arguments

"A trial court's denial of a motion for mistrial and a motion for new trial based on improper closing arguments are reviewed for abuse of discretion." *Whitney v. Milien*, 125 So. 3d 817, 818 (Fla. 4th DCA 2013). "If the issue of an opponent's improper argument has been properly preserved by objection and motion for mistrial, the trial court should grant a new trial if the argument was 'so highly prejudicial and inflammatory that it denied the opposing party its right to a fair trial.'" *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1271 (Fla. 2006) (quoting *Tanner v. Beck*, 907 So. 2d 1190, 1196 (Fla. 3d DCA 2005)).

"Send a message" arguments have been defined as those that ask a jury to "award money not based on the proof supporting the proper recoverable damages allowed in a wrongful death action, but to remedy wrongful, intentional, as opposed to negligent, conduct," and those that "suggest[] to the jury that a significant verdict will send a message to stop [such] experiences from happening and will make others less likely to act irresponsibly." *City of Orlando v. Pineiro*, 66 So. 3d 1064, 1070-71 (Fla. 5th DCA 2011) (footnote omitted). The overwhelming weight of Florida jurisprudence informs us that "send a message" arguments are clearly inappropriate when utilized in a way that links the "sending of the

4

message" to a compensatory damage award, and not to the entitlement to, or amount of, punitive damages.

In *Ocwen Financial Corp. v. Kidder*, 950 So. 2d 480, 481 (Fla. 4th DCA 2007), this court found that an attorney presented a "send a message" argument when, "[d]uring closing argument, the plaintiffs[' attorney] suggested to the jury that it should send a message 'loud and clear from this courtroom that you are not going to permit these corporations to treat these people this way.'" However, the court concluded that the comment was not improper, because claims for both compensatory damages and punitive damages were submitted to the jury at the time the comments were made: "Ocwen's argument that this type of argument cannot be used in a punitive damage case ignores that '[p]unishment and deterrence are the policies underlying punitive damages.'" *Id.* at 482 (alteration in original) (quoting *W.R. Grace & Co.--Conn v. Waters*, 638 So. 2d 502, 504 (Fla. 1994)); *see also Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1238-39 (5th Cir. 1985) (stating that "[o]ur condemnation of a 'community conscience' argument is not limited to the use of those specific words; it extends to all impassioned and prejudicial pleas intended to evoke a sense of community loyalty, duty and expectation"); *Maercks v. Birchansky*, 549 So. 2d 199, 199 (Fla. 3d DCA 1989) (stating that in "suit for compensatory damages in which there was no claim for punitive damages" court would "not condone such arguments as were made in closing where counsel for plaintiff three times asked the jury as the 'conscience of the community' to 'send a message with its verdict'"); *Erie Ins. Co. v. Bushy*, 394 So. 2d 228, 229 (Fla. 5th DCA 1981) (reversing because plaintiff's counsel's "send a message" argument during closing created the possibility that part of the damages awarded may have been punitive when "there was no basis for" punitive damages before the jury).

The purpose of punitive damages is to punish for outrageous conduct done in reckless disregard of another's rights to deter similar conduct. *See, e.g.*, *W.R. Grace & Co.--Conn.*, 638 So. 2d at 504 ("Punishment and deterrence are the policies underlying punitive damages."). Compensatory damages, on the other hand, are intended only to make a plaintiff whole. *See, e.g.*, *Engle*, 945 So. 2d at 1262 (noting that compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001))). Here, the proceedings were bifurcated so that the jury would first decide the issues of entitlement to and amount of compensatory damages, and entitlement to punitive damages. Next, if necessary, the jury would determine the amount of punitive damages. Because appellee's counsel's arguments related specifically to the compensatory award when describing the verdict

5

as the jury's "call to action" and imploring it to "speak loud and speak clear," this was an obvious and direct plea to include a punitive element in the jury's compensatory damages award.

Appellee's counsel's comments are similar to those that were at issue in *Kloster Cruise Ltd. v. Grubbs*, 762 So. 2d 552, 554 (Fla. 3d DCA 2000), where, during closing argument, the plaintiff's counsel argued that a cruise ship was unsafe and that "the jury should 'tell [the defendant] by your verdict in this case to do something about this . . . . Tell them by the verdict that it is significant.'" Even though counsel did not specifically use the phrase "send a message," the Third District nonetheless categorized the statements as "send a message" arguments, and held that the trial court's denial of a motion for mistrial was error because the comments were "clearly improper." *Id.* at 555.

Exhorting a jury with a "call to action" to use its verdict to "speak loud and speak clear" via a compensatory damage award, as was done repeatedly here, is improper. In *Ocwen*, we held that such arguments are permissible where claims for both compensatory and punitive damages are before the jury. *See* 950 So. 2d at 482. However, today we clarify that even when both claims are at issue, a plaintiff may not utilize "send a message" and conscience of the community arguments when discussing whether the plaintiff should be compensated, due to the potential for the jury to punish through the compensatory award. Appellee's counsel's comments in this case served only to divert the jurors' attention from the proper consideration.

II.     Attacks on Opposing Counsel

Comments by counsel must be directed to the strength of the evidence, and not amount to an *ad hominem* attack on opposing counsel for being part of a purported scheme to mislead. *See United States v. Sanchez*, 176 F.3d 1214, 1224-25 (9th Cir.1999) (finding misconduct and holding that prosecutor's comments were a denigration of the defense where prosecutor stated "the defense in this case read the records and then told a story to match the records. And, ladies and gentlemen, I'm going to ask you not to credit that scam that has been perpetrated on you here"); *see also Coleman v. State*, 126 So. 3d 1199, 1203 (Fla. 4th DCA 2012) (Ciklin, J., concurring) (stating that "*ad hominem* attacks on one's opposing counsel are anathema to the profession of lawyering").

Appellee's counsel's reference to "the defense in these cases" was clearly directed toward appellants' attorneys. He could not have been merely referring to either of the litigants, particularly when describing the

"recasting" of jury instructions and verdict forms in other litigation – extraneous matters not in evidence during the trial. Further compounding this *ad hominem* attack, appellee's counsel expressly linked appellants' attorneys to alleged wrongdoing by identifying the Tobacco Institute as "one of their co-conspirators."

There is no question that appellee's counsel went outside the broad parameters of permissible closing argument when he turned his commentary on opposing counsel. These statements were totally irrelevant to the issue of appellants' liability. The insinuation that appellants' attorneys were engaged in a conspiracy with either the defendants or third parties to mislead, conceal, or manipulate as part of an on-going scheme did not merely push the envelope, but instead went wholly beyond the pale.

Consistent with our standards for proper argument, we distinguish reasoned analysis of the evidence and the credibility of testimony, which is appropriate, and disparagement through attacks on a party or opposing counsel's character or morals. Such tactics are decidedly improper and can cause prejudicial misdirection of the jurors' attention when those character traits are not in issue. *See, e.g., Hosang v. State*, 984 So. 2d 671, 672 (Fla. 4th DCA 2008) ("[A]ttorneys must 'confine their argument to the facts and evidence presented to the jury and all logical deductions from the facts and evidence.'" (quoting *Knoizen v. Bruegger*, 713 So. 2d 1071, 1072 (Fla. 5th DCA 1998))). In emphasizing this distinction in trial strategy, we endorse the former approach, and decry the latter.

The comments at issue regarding defense counsel did not involve evidence, or deductions and conclusions therefrom. Whether these comments are viewed as an unsubstantiated accusation, an unflattering characterization, or as a mere inadvertent or unintended flourish, they were neither reasonable nor permissible inferences to be drawn from the evidence adduced at trial. Comments accusing an opposing party's attorney of wanting the jury to evaluate the evidence unfairly, of trying to deceive the jury, of deliberately distorting the evidence, or of participating in a concerted scheme to do so, have no place in our legal system.

We have previously held that "[r]esorting to personal attacks on defense counsel is an improper trial tactic which can poison the mind of the jury." *Wicklow v. State*, 43 So. 3d 85, 87–88 (Fla. 4th DCA 2010). Accusations of wrongdoing by opposing counsel, such as those made in this case, would likely be improper even if made solely to a judge. Here, the comments achieved no other purpose than to discredit appellants' attorneys in the eyes of the jury, planting in the juror's minds the thought

7

that the attorneys themselves were engaged in nefarious behind-the-scenes acts in "the defense of *these* [tobacco] *cases."*

After the court reserved on the motion for mistrial, appellants' counsel accurately explained to the court why the comments were so harmful:

> MR. BASSETT: The argument that Mr. Sales is articulating is an inference to the very violation that we have been seeking to prevent all along. I mean, what he's exactly arguing is, maybe not directly, that we, in this courtroom, have participated in [a] conspiracy, but that indirectly we are by presenting the defense we're presenting. So we're defending the case in a way that he's going to argue by inference is consistent with the conspiracy that's been ongoing for the last 40 years.
>
> THE COURT: I understand your concern and the record will speak for itself. Comment on the evidence is fair; comment on the attorneys is not. So let's go on.

Appellee's counsel tried to explain he was not suggesting that the defense attorneys were participants in any conspiracy. We are not persuaded that this attempt at clarification served to unring the bell; rather, it appears to us that these comments were reasonably likely to prejudice the jury and fatally impair the fairness of the proceedings. *See Henry v. Beacon Ambulance Serv., Inc.*, 424 So. 2d 914, 915-16 (Fla. 4th DCA 1982) (holding that trial court's curative instruction that jury disregard inappropriate closing argument concerning a pre-suit settlement with another defendant was "insufficient to counteract the effect of appellees' improper argument"). We believe that the trial judge's interpretation of appellee's counsel's comment was correct when he noted at sidebar:

> I'm not sure exactly what I heard, but it sounds like you made reference to these attorneys seeking to modify the instructions and the questions on the verdict form, and then you talked about co-conspirators . . . . it sounds like, whether it was intentional or not, you were making reference to the attorneys being involved in a conspiracy. That, as you know, is prohibited. . . . I'm going to ask the court reporter to note your comments so that if we need to go back to them, we can. But I just got to tell you it jumped right out at me, and maybe I missed it and didn't hear it in proper context, but you may want to clarify. And I'm reserving on the motion.

Considering that this comment, in the words of the trial judge, "jumped right out at [him]," it is highly probable that it influenced the jury as well. A subsequent curative instruction by the court aimed at rectifying this error would in all likelihood have been insufficient to remedy the damage. Further, appellee's counsel's attempt to mitigate the consequences of his statements by explaining his intentions was also wholly ineffective.

As the Third District recently noted, the tactic of maligning opposing counsel during closing argument has unfortunately become a persistent problem:

> [C]omments on the credibility of counsel, such as those at issue in this case, are recurring in closing arguments at an alarming rate. We caution counsel . . . to uphold their professional and ethical obligations and to be mindful of the line clearly established by the courts of this State. *See, e.g., Jackson v. State*, 421 So. 2d 15 (Fla. 3d DCA 1982); *Del Rio v. State*, 732 So. 2d 1100 (Fla. 3d DCA 1999).

*Fagins v. State*, 116 So. 3d 569, 569 (Fla. 3d DCA 2013).

This court has previously held that comments "impugn[ing] the integrity or credibility of opposing counsel" in the context of a criminal trial were egregious enough to constitute fundamental error. *Wicklow*, 43 So. 3d at 88. In order for an error to be considered harmless in civil cases, "the beneficiary of the error must prove that there is no reasonable possibility that the error complained of contributed to the verdict." *Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1253 (Fla. 2014). Because there is no reasonable possibility that the errors discussed above were harmless, we reverse the judgment and remand for new trial.

*Reversed and Remanded.*

CIKLIN, C.J., and CONNER, J., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**